Van Vorst, J.
This case assumes a different appearance from what it bore when it was before me on the demurrer to the complaint. Then it appeared that the defendant Brown was described as trustee where-ever his name appeared in the subscription paper signed by the plaintiffs, whereas, when the paper was produced on the trial, he does not appear to be so described. As far as that paper is concerned, whatever Brown engaged to do was in his own right, and not as trustee. Again, it appeared on that occasion that certain affirmative representations had been made *462 by "the defendants, which, by demurring, they conceded. No such representations have been proved on this trial.
The right of the plaintiffs to equitable relief, if entitled to any, must arise from the terms of the subscription paper to which they are parties. And the true question is whether they are entitled to anything in addition to the shares of stock which they severally received from Brown, under their- agreement to take and pay for stock.
The paper states that, whereas a corporation was about to be organized, under the laws of New York, to be called the Dunderbergh Mining Company, for the purpose, among other things, of acquiring title to certain mining lands and lodes situated in the State of Colorado, the capital stock whereof was to be divided into 150,000 shares, of the par_value of ten dollars per share; all of which stock was to be issued to the defendant Brown inpayment for said mines," “Now, in consideration of the transfer to us of the several number of shares set opposite our names respectively, hereto subscribed, ,we do consent and agree with the said J. Warren Brown, that we will accept and receive such stock, and pay for the same at the rate of -four dollars per share. And for the purpose of carrying' out this agreement, we hereby agree to pay to Walter ' E. Hatch, of, &c., as trustee for us, on demand, the ’ aforesaid sums of money so subscribed by ús, to be held by the said trustee for us, and paid over by him to the said J. Warren Brown, upon the delivery to the Dunderbergh Mining Company of a deed or deeds for the mines and mining properties above named, and the receipt from the said J. Warren Brown of the several number of shares of stock subscribed byus respectively, and not otherwise. Dated New York City, March 10th, 1879.”
The corporation was duly organized and á certifi *463 cate thereof was filed in the proper office, in pursuance of the statutes, on the 8th of May, 1879. On the 31st day of May, the mining property above referred to, which had been in the meantime purchased and paid for by Brown for a syndicate, of which he formed a part, and which syndicate had an option for the purchase thereof, was conveyed by him to the corporation, and he received certificates for the whole capital stock thereof, and thereout delivered to the plaintiffs and other subscribers the number of shares they had severally agreed to take, and for which they had actually paid, before the conveyance was made by Brown to the corporation.
The number of shares so subscribed fpr was sixty thousand and upwards, and the remaining eighty thousand shares and upwards were divided among the members of the syndicate who had promoted the organization of the corporation, and who were represented by Brown.
It is claimed by the plaintiffs that the plan which the defendants had adopted, and which was expressed in an agreement made between themselves, and in pursuance of which they took to themselves such eighty thousand shares of stock, and which agreement was not disclosed by them to the plaintiffs, was a fraud upon them which entitles them to redress in this action, and as relief they demand that the defendants shall account and pay for the 86,000 shares of stock at its par value, and that the fund arising therefrom be rat-ably distributed among the plaintiffs and other stockholders entitled to share therein.
Such specific relief as is indicated above, I am persuaded, could only be awarded at the suit of the corporation itself, or in the event of its refusal to sue, at the instance of a stockholder. But should an action be sustained in favor of a stockholder for the reason above assigned, the court would administer the fund, *464 either through the agency of the corporation or a receiver to take its place.
It would still be an action to recover for a claim in favor of the corporation, through which the rights of all the stockholders would be protected. For when the corporation was made whole, stockholders would be indemnified (Greaves v. Gouge, 69 N. Y. 154).
But this action, according to the plaintiffs’ election; expressed on the trial, was not to redress a wrong to the corporation, or one which it could prosecute, but was maintained to recover for the injury and damage which the plaintiffs had sustained through the defendants’ fraudulent conduct towards them individually.
At first blush, it would seem that an action to, recover for damages to be compensated for in money, arising from the fraudulent conduct of another, would be one strictly at law and not in equity. But it is urged by the learned counsel for the plaintiffs, that the defendants, through Brown, their trustee, and otherwise, stood to them in" confidential or fiduciary relations. That Brown, as he was a trustee for his co-defendants, was, in like manner, the agent or trustee of the plaintiffs, and that the investigation of matters growing out of such relation is a, proper subject for equitable cdgnizance. It is also suggested in the same connection that the plaintiffs and' defendants were in substance co-partners, and that whatever profits were made by the defendants in the way of shares of stock or otherwise growing out' of the organization of this corporation should be shared by the plaintiffs, who were, as is claimed, original stockholders in the corporation.
By the syndicate agreement, the defendants engaged-between themselves, for a consideration to be paid by them, to obtain an option for the purchase of the mining property in 'question for the sum of $240,,000. That they would organize a corporation, the whole capital *465 stock whereof should be conveyed to the defendant, Brown, one of their number, in whom the title of the property should become vested, in payment for the same. The purchase of the property and the organization of the corporation was, however, conditional upon their procuring subscriptions to the stock, or their ability to sell stock to an amount sufficient to realize the sum agreed to be paid for the property. The residue of the stock, after deducting such portion as should be sold, was to be divided among the members of the syndicate. As has been already stated, the plaintiffs were brought into their present relations to this corporation as stockholders thereof through the subscription paper above referred to. They knew nothing of the syndicate agreement or of the arrangements between the defendants.
Was this scheme in itself a fraud upon the plaintiffs ? The fraud, if any, in so far as the plaintiffs are concerned, must consist in the failure of the defendants to disclose that the title to the property had not been acquired by Brown when they engaged to take stock from him, and that the money which they had agreed to pay for the stock was to be applied in payment for the property.
If the relation between the plaintiffs and Brown was a fiduciary one, then the duty to disclose was dear enough, as it would also be if the plaintiffs had been invited to take partin the organization as original stockholders.
But the subscription paper recites that it was an object of the corporation to acquire the title to the mining property, and that all the capital stock was to be issued to Brown in payment for the same.
It was with Brown, as the contemplated future holder of all the capital stock, for a consideration pro-, ceeding from him, that the plaintiffs contracted. The prospectus issued, giving facts in relation to the enter *466 prise, stated that a portion of the stock only would be offered for sale, not at the par value at which it was to be issued, but at four dollars per share. It was with reference to such shares, and not the original shares, that the plaintiffs contracted.
It could not have been the understanding or belief of the plaiútiffs that they were to have a part of the original stock. They made no contract with the corporation to take any part of the capital stock, and no engagement with it, which the corporation could itself have enforced. The only person who could have obliged the plaintiffs to take the stock was Brown himself, and' that his own shares.
The plaintiffs were not copartners with the defendants in the purchase of the property itself, as in the case of Getty v. Devlin (70 N. Y. 504).. There is nothing in the subscription paper, signed by the plaintiffs, which favors such idea. Hatch, the trustee for them, was to hold over the moneys subscribed and paid until Brown had conveyed the land, when they were to receive their stock from him. This negatives the idea or understanding that the plaintiffs were to be interested in the original purchase of the land, or in its profits.
Brown, however, did substantially use the moneys subscribed in payment for the lands; but can plaintiff complain of that, so long as they did in the end receive what they contracted for ? I think not; at least, not in this action.-
If there was any breach of contract duty on the part of either Brown or Hatch, in the way they used money, they would be liable in damages.
The fact that this money was so used, the plaintiffs having received the share of stock for which they had contracted, could not create a new and independent relation between either the corporation or the defendants and the plaintiffs, by which the stock received by *467 them from Brown should be regarded as original shares, or they, as to the purchase of the mines, should be constituted copartners with the defendants. Such results are not consequences of a breach of duty on the part of Brown and Hatch, and if plaintiffs lost anything through their misconduct, if there was misconduct, compensation can be made therefor in an action for damages founded upon the breach.
If there had been positive misrepresentation in the subscription paper, or if the plaintiffs had been induced to sign the same and to take stock, upon the understanding that they were original stockholders of the corporation, or interested in the mining property itself, the result might be otherwise.
If the plaintiffs desired to know more about the enterprise and its details, or of the relation of Brown and Hatch to it, than is disclosed in the' paper which they signed—if they desired further information in regard to the mining property and its cost, and how the title was to be acquired by Brown, and with what funds, there was enough in the paper itself to put them upon inquiry. Not having inquired, and no false statements having been made to influence their action, the plaintiffs can hardly say that they have been intentionally deceived by the defendants.
The duty of disclosure as to the corporation to whom the defendants stood in a fiduciary relation is quite another question; but it is not in controversy here. The English cases cited by the learned counsel for the plaintiffs illustrate the law upon that subject; Simons v. Vulcan Oil and Mining Co., 61 Penn. St. 202, is in that category. There the corporation itself recovered damages for the profits made by the vendors, who had misrepresented the cost of the property.
But here the plaintiffs, stockholders, prosecute for *468 the fraud, alleged to have been perpetrated as to them individually.
There" is no complaint that the corporation paid too much for the property,- or issued too much stock therefor. But logically, contrariwise—for the plaintiffs claim, in substance, to be entitled to share in all the stock which the defendants received On the conveyance of the property, over and above that which was distributed to the so-called subscribers, and their claim to redress in this action is based upon the fact that they received such stock.
I cannot conclude that the defendants’ conduct was such as to render them liable to account for the shares of stock which they received on the distribution made by Brown among them, or for any profits which they realized on the sale of the mining property to the corporation, or that the plaintiffs are entitled to any relief herein upon the facts disclosed upon the trial.
The plaintiff’s complaint is, therefore, dismissed with costs.