[No. 373. Decided April 18, 1892.]

JOHN SHOUFE AND HUGH McCRUM, *Appellants*, v. H. H. GRIFFITHS, M. L. ABBOTT, WILLIAM B. ROBERTSON, MINDA S. GRAFF, HANNAH KISTENMACHER, ALICE J. ROBERTS, G. W. TRAVERSE AND THOMAS B. HARDIN, *Respondents.*

PURCHASE OF LAND BY SYNDICATE—FALSE REPRESENTATIONS OF MEMBER—RIGHTS OF MORTGAGEE—ESTOPPEL.

Where one party of a syndicate purchases land for the syndicate, falsely representing the purchase price to be more than it actually is, and that he is paying for a proportionate interest therein, while in fact the other members of the syndicate pay the whole price, the equitable title to the land is in the parties paying the actual purchase price. (DUNBAR, J., dissents.)

A mortgage by such party of his alleged interest in the land of the syndicate is void where the legal title to the land is in trustees for the benefit of the syndicate.

Although a declaration of trust made and recorded by the members of the syndicate declares that a certain interest in the land of the syndicate belongs to the party making the false representations, yet where such declaration was made in ignorance, which was not chargeable to neglect, and the mortgagee had no knowledge of its execution, the actual owners of the land are not estopped from asserting their rights.

*Appeal from Superior Court, King County.*

Action by John Shoufe and Hugh McCrum, as co-partners, under the name of Shoufe & McCrum, against H. H.

11—WASH

Griffiths and M. L. Abbott, doing business under the name of Abbott & Griffiths, William B. Robertson, Minda S. Graff, Hannah Kistenmacher, Alice J. Roberts, G. W. Traverse and Thomas B. Hardin to foreclose a mortgage on the alleged undivided two-thirds interest of Abbott & Griffiths in certain real estate. The mortgage had been executed to George H. Bell and by him assigned to Shoufe & McCrum. Abbott & Griffiths held a bond for a deed from John Krumm and wife conditioned for a conveyance of certain land at the price of $5,500, reciting that Abbott & Griffiths had paid the obligors on the date of the bond $2,500, that $1,300 in money was to be paid at time of conveyance, and two mortgages given by Krumm as security for $1,700 to be assumed by the grantees. The actual purchase price was $3,550, of which $500 was paid at the time of execution of the bond, and the balance to be paid in cash in the sum of $1,350, and by the assumption of the mortgages for $1,700, on the execution of a deed. Abbott & Griffiths organized a syndicate to purchase the land, composed as follows: M. L. Abbott, H. H. Griffiths, G. W. Traverse and Minda S. Graff, each holding a one-fifth interest, and Alice J. Roberts and Hannah Kistenmacher jointly holding a one-fifth interest. According to the purchase price, alleged by Abbott & Griffiths, it was necessary for the syndicate to contribute $3,800 cash. Alice J. Roberts and Hannah Kistenmacher jointly contributed $740, and Minda S. Graff and G. W. Traverse each contributed $740, thus making the sum contributed by them $2,220. As the actual cash required for the purchase, in addition to the assumption of the $1,700 of encumbrances, was $1,850, they had contributed in excess of the necessary price the sum of $470, which was appropriated by Abbott & Griffiths, who were conducting all the negotiations. Abbott & Griffiths had represented that the price agreed upon was $5,500, and that they were con-

tributing $740 each, which, with $100, realized from a
sale of a portion of the land and applied on the purchase
price, made the sum of $3,800. The land was deeded to
"H. H. Griffiths and Minda S. Graff, trustees;" there-
after Abbott & Griffiths executed a mortgage to George
H. Bell, on one undivided two-fifths of said land, to secure
certain notes, which were assigned by Bell to Shoufe &
McCrum. From the decree of the superior court of King
county, declaring the mortgage no lien upon the property
sought to be charged, and finding that the title to said
property is in Minda S. Graff an undivided one-third, G. W.
Traverse an undivided one-third, Alice J. Roberts and
Hannah Kistenmacher an undivided one-third, the plaint-
iffs appeal.

*Tustin, Gearin & Crews*, for appellants.
*Fishback, Hardin & Meek*, for respondents.

The opinion of the court was delivered by

Scott, J.—It is contended by the appellants that the
land in question was sold to Abbott & Griffiths by Krumm
and wife, and was by Abbott & Griffiths sold to the syndi-
cate of which they were members. The fact that the pre-
liminary negotiations for the purchase had been conducted
by Abbott & Griffiths, and that the bond given by Krumm
and wife ran to them, lends some color to this claim. But
from an examination of the whole proof as well as of the
syndicate agreement itself, we are led to the conclusion
that the purchase was made by the syndicate direct from
Krumm and wife, and that this was the understanding of
the members of the syndicate as between themselves, and
was the fair intendment to be drawn from all their deal-
ings. It clearly appears that the members of the syndi-
cate were to engage in the enterprise upon an equal footing
according to the representations of Abbott & Griffiths, and

appellants' contention that the facts in this case are not
such as will warrant the granting of any relief to the re-
spondents, Graff, Kistenmacher, Roberts and Traverse, is
untenable.    The fact that the land was worth all that
Abbott & Griffiths falsely represented to be the purchase
price dees not alter the case, for the difference between the
actual purchase price paid to Krumm and wife, and the
price represented by Abbott & Griffiths to have been paid
or agreed upon, resulted in a direct loss to the other mem-
bers of the syndicate in the proportion paid by each.
They could have bought the land just that much cheaper,
and their profits in case of a sale for an enhanced price
would have been just that much more.    It is true that the
other members of the syndicate relied upon the representa-
tions of Abbott & Griffiths as to the value of the land, but
they also relied upon the further fact as they supposed,
and were induced to believe, that Abbott & Griffiths were
substantiating their representations as to the value of this
land by an investment of their own money to the same ex-
tent proportionately as that contributed by the other mem-
bers of the syndicate; and it is not at all likely they would
have engaged in the enterprise on the terms they did engage
in it had they known the true inwardness of the transac-
tion.    While all willful, false representations resulting in
loss or damage will not afford a basis for a recovery, the
foundation here is sufficient.    The aim of the law is to grant
relief in all such cases where possible, and the law will not
look with favor on a party who flippantly admits having
made false representations to another, thereby inducing him
to act in a certain way, but who insists there is no remedy.
There is a legal distinction, if not a moral one, between the
facts of this case and of one where a party in selling a
piece of property as his own to one who understands he is
buying it from such party, falsely represents that he paid
more than he really did pay for it.    In this case these

respondents were induced to pay the full purchase price for the land, and to allow Abbott & Griffiths a two-fifths interest therein by reason of the representations of Abbott & Griffiths that they were contributing a proportionately equal amount. The respondents aforesaid were induced to pay that much more for their respective interests than they otherwise would have paid. In *Crater v. Binninger*, 33 N. J. Law 513, 97 Am. Dec. 737, a recovery was permitted under very similar circumstances.

Appellants further contend that they stand in the position of *bona fide* incumbrancers without notice. This does not avail them anything. The most which the mortgage could encumber was an equitable estate in Abbott & Griffiths. The doctrine which protects *bona fide* purchasers without notice is applicable solely to purchasers of a legal title; and the purchaser of an equitable interest purchases at his peril, and acquires the property burdened with every prior equity charged upon it. *Shirras v. Caig*, 7 Cranch, 34; *Vattier v. Hinde*, 7 Pet. 252; *Boone v. Chiles*, 10 Pet. 177. They had notice that Griffiths and Minda S. Graff held the legal title to the land as trustees for the benefit of the syndicate.

It is further urged that these respondents are estopped from asserting their rights in consequence of the declaration of trust made by them which represented Abbott & Griffiths as the owners of a two-fifths interest in the land. But it seems to us that this claim is wanting in several essentials. In the first place, it appears that when this declaration was made the respondents Graff, Kistenmacher, Roberts and Traverse were ignorant of their rights in the premises, which ignorance was not chargeable to their neglect. While the declaration was made and recorded prior to the execution of appellants' mortgage by Abbott & Griffiths, it doesn ot appear that Bell the mortgagee, nor his assignees the appellants, had any knowledge of its ex-

istence. If they had no such knowledge they cannot well claim they were misled by its contents. The doctrine of constructive notice cannot be invoked in their favor, and in any event, if they did know of it, or if such representations were made to them personally, it would be necessary for them to show that by reason thereof they were induced to take the mortgage, and there is no such proof in the record. In support of the above propositions see *Whitaker v. Williams,* 20 Conn. 98; *Preston v. Mann,* 25 Conn. 118; *Danforth v. Adams,* 29 Conn. 107; *Boggs v. Merced Co.,* 14 Cal. 366; *Davis v. Davis,* 26 Cal. 41; 85 Am. Dec. 157; *Fletcher v. Holmes,* 25 Ind. 469; *Long v. Anderson,* 62 Ind. 537; *Greensburgh, etc., Turnpike Co. v Sidener,* 40 Ind. 424.

The judgment of the superior court is affirmed.

ANDERS, C. J., and HOYT, J., concur.

STILES, J., concurs in the result.

DUNBAR, J.—I dissent. An examination of all the testimony in this case convinces me that the respondents simply purchased this land from Abbott & Griffiths, and that Abbott & Griffiths were in no sense their agents, and it cannot in my mind be distinguished from the case mentioned by the majority where a party sells land as his own and falsely represents that he paid more than he actually did pay for it. There is no doubt in my mind that there was moral turpitude on the part of the appellants, but the courts should not assume to correct the morals of the citizens of the country any further than the law plainly imposes that duty upon them. I think the judgment should be reversed.