[No. 6623.  Decided June 17, 1907.]

OLE P. NORGREN *et al.*, *Respondents*, v. J. EUGENE JORDAN *et al.*, *Appellants.*[1]

CANCELLATION OF INSTRUMENTS—FRAUD—COMPLAINT—SUFFICIENCY. A complaint in an action to cancel an assignment of a school land contract and to quiet title, alleging the assignment by plaintiffs to one of the defendants of the contract for the land, which was agreed to be held in trust to secure advances to be made by such defendant, the breach of the contract by him, and that he was about to fraudulently convey the same to the other defendants, states a cause of action.

[1]Reported in 90 Pac. 597.

SAME — PLEADING — TENDER — NECESSITY. The complaint in an action to cancel the assignment of a school land contract, assigned in trust to secure advances, is sufficient without alleging a tender of the advances, where it appears that a tender would have been futile and the complaint alleges a readiness to repay all advances and interest.

SAME—AMENDMENT OF PLEADING—APPEAL—HARMLESS ERROR. A complaint in an action to cancel the assignment of a school land contract, assigned to secure advances, is sufficient without alleging that the assignment was intended as a mortgage; and requiring an amendment to that effect is harmless error and the amendment immaterial.

SAME—GROUNDS—FRAUD—FRAUDULENT CONVEYANCES—EVIDENCE— SUFFICIENCY. An assignment of a school land contract, as security for the repayment of advances to be made, is not shown to be fraudulent as to creditors by reason of recitals in an instrument claimed to have been cotemporaneous and dictated by the debtor making the assignment, when it appears more likely to have been made subsequently and drawn up by the assignee and misunderstood by the debtor, and where the creditors were informed of and consented to the assignment, and the assignee had agreed with all the principal creditors to advance money to pay their claims.

HUSBAND AND WIFE—COMMUNITY PROPERTY—AUTHORITY OF HUSBAND — TRUST — VENDOR AND PURCHASER — BONA FIDE PURCHASER. Where a trustee held a school land contract belonging to a community as security for future advances to be made, the written consent of the husband, not joined in by, and concealed from, the wife, that a conveyance might be made by the trustee to a third person, is insufficient to authorize the conveyance or to make such third person a *bona fide* purchaser.

VENDOR AND PURCHASER—BONA FIDES—EQUITABLE INTERESTS. Upon assignment of an equitable interest in land as security for the repayment of future advances, the assignees cannot be in the position of *bona fide* incumbrancers, without notice, as the doctrine of protection of *bona fide* purchasers applies only to purchasers of the legal title.

CANCELLATION OF INSTRUMENTS—DEFENSES—TRUSTS—ACCOUNTING —EVIDENCE OF PAYMENTS—SUFFICIENCY. In an action to set aside an assignment of a school land contract held in trust to secure advances, the evidence is insufficient to support a claim that $2,000 was paid by the trustee upon taking the assignment, where the assignor claims that no payment was made, the assignment recited a consideration of one dollar, the assignee, who was a shrewd litigious business man, made no examination of the title, agreed to pay the debts of the

assignor in excess of the amount paid on the contract, and took a receipt indicating that the transaction was absolutely fraudulent as to creditors, the alleged payment of $2,000 being for interests amounting to but a mere shadow.

SAME: The evidence is insufficient to support a claim that $500 was paid by a trustee holding an assignment of a school land contract to secure advances, where it was alleged that the sum was paid in currency to a broker for securing a sale of part of the lands, when no sale was effected and the commissions were never earned and the other evidence fails to support the claim.

Cross-appeals from a judgment of the superior court for King county, Rice, J., entered July 11, 1906, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Reversed on plaintiffs' cross-appeal.

*Jay C. Allen*, for appellants.

*Kerr & McCord* and *J. L. Finch*, for respondents.

RUDKIN, J.—In the month of December, 1904, the plaintiffs in this action were desirous of purchasing from the state the forty acres of school land now in controversy, upon which they had resided for upwards of twelve years. At that time they were indebted to Eric Ulin in the sum of $1,475, on account of moneys advanced to enable them to acquire the interest of former occupants of the land and for other purposes. Ulin had further agreed to advance the first payment on the contract with the state for the purchase of the land, but for reasons not disclosed by the record, the advances were not made, and the plaintiffs were compelled to look elsewhere for financial aid. With that object in view, they entered into a contract with Nelson Chilberg on the 17th day of December, 1904. This contract, after reciting the fact that the plaintiffs were indebted to Ulin in the sum of $1,475, the fact that they were desirous of purchasing the school land in question, which was to be offered for sale two days later, and the fact that the plaintiffs desired an advance on the land to the amount of $2,500, to pay off and satisfy the Ulin indebtedness and to

make the initial payment on the contract with the state, contained an agreement on the part of Chilberg to advance the sum of $2,500 on the property, and an agreement on the part of the plaintiffs to give their promissory note for that amount, secured by a mortgage on the school land as soon as the contract of purchase was entered into. Pursuant to this agreement, the school land was bid in by the plaintiffs, or in their behalf, on December 19, 1904, for the sum of $5,440, payable in ten annual installments, and the first payment of $540 was made by Chilberg as agreed. On the same date the plaintiffs executed and delivered their promissory note and mortgage to Chilberg in fulfillment of their part of the agreement. Chilberg then gave Ulin, or the representative of his estate, a check or order for the amount of the Ulin claim, payable on some contingency, the exact nature of which does not appear. The Ulin claim was not paid, however, nor were any further advances made under the mortgage, with the exception of $50 or $60. The reason for this default, if default it was, is not material on this appeal.

In the early part of March, 1905, the plaintiffs were requested to make an assignment of the school land contract to Chilberg, accompanied by a supplemental agreement reciting the purpose for which the assignment was made, but after consulting with their attorney, and with the defendant Morrow, the plaintiffs refused to make such assignment. Soon thereafter, and on the 14th day of March, 1905, the plaintiffs made an assignment absolute in form of the school land contract to the defendant Jordan. The purpose of this assignment and the conditions upon which it was made we will consider later. On the 18th day of April, 1905, the defendant Jordan entered into a contract of sale with the defendant Lizzie G. Thomas, wherein he agreed to convey to her the entire tract, less 4.6 acres theretofore conveyed to other parties. This action was thereupon brought by the plaintiffs to set aside the assignment of the school land contract from the plaintiffs to the defendant Jordan, and to quiet title in the

plaintiffs as against the defendants Jordan and the Thomases, on the ground of fraud in procuring the assignment and in the subsequent disposition of the property. The issues in the case will sufficiently appear from a discussion of the points involved on the different appeals. The court below made findings of fact and conclusions of law, and by its judgment directed a reassignment of the school land contract to the plaintiffs, upon their paying into the registry of the court the sum of $3,556 for the use of certain of the defendants. From this judgment both parties have appealed.

We will first consider the errors assigned by the defendants. At the commencement of the trial an objection was interposed to the introduction of testimony under the amended complaint, for the reason that it did not state facts sufficient to constitute a cause of action. The refusal of the court to so rule is the first error assigned. The amended complaint alleged, in substance, that the plaintiffs were the equitable owners of the land on a certain date, and were indebted to diverse persons in the sum of about $2,000; that the defendants Jordan and Morrow falsely and fraudulently represented to the plaintiffs that if the plaintiffs would assign the school land contract to the defendant Jordan, the defendant Jordan would advance sufficient sums to pay the plaintiffs' indebtedness as the same became due, and their living expenses until such time as they could sell a portion of the land to advantage; that relying on these representations, the plaintiffs did assign the school land contract to the defendant Jordan; that the defendant Jordan never intended to advance money to pay the plaintiffs' indebtedness, or for any other purpose, except such sums as were absolutely necessary to allay their suspicions; that he refused to advance any money to pay the plaintiffs' said indebtedness as agreed, and only advanced for their living expenses about the sum of $410; that he refused to make further advances and had entered into an agreement to convey the property to the Thomases for the purpose and with the intent of defrauding the plaintiffs and placing the property beyond their reach,

and that the plaintiffs were ready and willing to repay to the defendant Jordan all sums advanced with legal interest. It seems to us that this complaint clearly states a cause of action. If it be conceded that the refusal of the defendant Jordan to make the advances, as agreed, was a mere breach of contract and not a fraud in law, even though he never intended to fulfill the agreement, the fact remains that the property was conveyed to him in trust and he will not be permitted to hold it in violation of that trust.

It is further contended in support of this objection that the amended complaint failed to allege a tender of the moneys actually received by the plaintiffs. Aside from the fact that the answer of the defendants showed that a tender would be futile, the complaint alleged readiness and willingness on the part of the plaintiffs to repay all advances with legal interest, and this allegation fully satisfied the requirements of the law. The ruling of the court in permitting the plaintiffs to amend their complaint by alleging that the assignment of the contract was intended as a mortgage, and praying for a foreclosure, is also assigned as error. This amendment was proposed simply because the court had intimated that the complaint was deficient without it. In this we think the court was in error. The amendment was unnecessary and immaterial and could not be prejudicial.

It is next contended that the assignment from the plaintiffs to the defendant Jordan was executed for the purpose of hindering, delaying and defrauding the plaintiffs' creditors, and that a court of equity should leave the parties where it finds them. This contention is based largely on the recitals contained in a memorandum, signed by the plaintiffs and the defendant Jordan, bearing the same date as the assignment of the school land contract. The defendant Jordan contends that this memorandum was executed at the same time as the assignment, that he prepared an instrument reciting the terms and conditions under which he held the assignment, that such instrument was not satisfactory to the plaintiff Ole

P. Norgren, and that said Norgren thereupon dictated the instrument in question as a substitute, and the same was duly executed by all parties. The plaintiffs, on the other hand, contend that they executed an entirely different agreement at the time of making the assignment, and that such instrument was thereafter obtained from them by the defendant Jordan on some pretext or another, and the present agreement substituted in its place. Aside from the direct testimony bearing upon this question, there is much in the record that tends to sustain the contention of the plaintiffs. The instrument was confessedly read over and signed by the defendant Jordan, at the time of its execution, and yet it recites facts which he testified positively that he had no knowledge of until several days after the assignment was made. Again, while this unique and formal instrument may have been dictated by an ignorant, illiterate Swede, such as Norgren is shown to be, yet to the ordinary observer it looks like the product of a more crafty mind. Furthermore, the record as a whole shows that the recitals in the instrument are absolutely false, and that the plaintiffs at no time intended or attempted to hinder, delay or defraud any of their creditors. The time or manner of the execution of the instrument is therefore immaterial, except insofar as that fact may tend to establish the charge of fraud and conspiracy against the defendants.

Who were the creditors to be defrauded? The principal creditor was the Ulin estate. The plaintiffs had already made provision for the payment of this claim in their mortgage to Chilberg, and it was through no fault of theirs that it was not paid. Whether it was, in fact or in law, secured by the Chilberg mortgage, we need not inquire. Some time after the assignment was made, the plaintiff Ole P. Norgren and the defendant Jordan called on Mrs. Ulin, the present holder of the claim, to ascertain whether she made any claim against Chilberg under the mortgage by reason of the facts we have alluded to, and she was then assured by the defendant Jordan that he would pay her claim. The next creditor in amount

was Chilberg. He was secured by mortgage, and it was expressly agreed that Jordan should pay him. The only other creditor to any considerable amount was Calvert. Norgren took him to Jordan and told him that Jordan would pay him. Every creditor was fully informed of the assignment from the Norgrens to Jordan, and of the purpose for which the assignment was made. There was no concealment and it is a significant fact that no creditor has complained or is now complaining. The assignment itself recites the nominal consideration of $1, an unusual recital in a transfer in fraud of creditors, and as stated above, the record rebuts even the slightest inference of fraud on the part of the plaintiffs.

It is next contended that the plaintiffs authorized the conveyance to the Thomases and that the latter are *bona fide* purchasers. There appears in the record a written consent to the sale, signed by Ole P. Norgren alone, but whether this was executed voluntarily or obtained through fraud we need not inquire. The property was the community property of the plaintiffs. Jordan held the property in trust and had no power to sell without their consent. The consent of the wife was never given, and the fact of the husband's consent was carefully concealed from her. The contract from Jordan to the Thomases was therefore unauthorized. The form of the contract itself, and all the surrounding circumstances, show that the Thomases were not *bona fide* purchasers as a matter · of fact, and they could not be such as a matter of law.

"Appellants further contend that they stand in the position of *bona fide* encumbrancers without notice. This does not avail them anything. The most which the mortgage could encumber was an equitable estate in Abbott & Griffiths. The · doctrine which protects *bona fide* purchasers without notice is applicable solely to purchasers of a legal title; and the purchaser of an equitable interest purchases at its peril, and acquires the property burdened with every prior equity charged upon it." *Shoufe v. Griffiths*, 4 Wash. 161, 30 Pac. 93, 31 Am. St. 910, and cases cited.

The record shows conclusively that the assignment was made to Jordan as security for future advances; that such advances have only been made in part; that Jordan has attempted to dispose of the property in violation of his trust, and in utter disregard of the rights of the *cestui que trust*, that the Thomases stand in no better position, and the judgment against them must be affirmed.

The plaintiffs have excepted to the allowance of several items charged against them by the court below, and have prosecuted a cross-appeal. These items we will now consider. The first in importance is an item of $2,000 which Jordan claims he agreed to pay and did in fact pay at the time of the assignment. This payment is denied by the plaintiffs. The assignment itself recites a consideration of $1. The agreement which the defendant Jordan claims was executed on the same day recites, "That all of said property be deeded and transferred by said Norgrens to the said Jordan as a means of protection to the said Norgrens against any and all of their creditors and for the purpose of keeping the said creditors from getting said property and collecting said debts and taking the same away from the said Norgrens. The said Jordan proposes in the meantime to assist the said Norgren financially in order to support and maintain himself and family until such time as the said Norgren may be able to support himself and family, to which financial aid the said Norgrens are in urgent need"; but is entirely silent as to any payment of $2,000. The $2,000 paid was taken from a sideboard or cupboard in the defendant Jordan's office, while other small payments not in dispute were made through Dexter Horton & Co. bankers. The receipt for the payment is a suspicious looking document on its face. Jordan is a shrewd business man, has been a party to about fifty lawsuits during his residence in Seattle—"all prosecuted by blackmailers" if you please—and has been a party to business transactions involving hundreds of thousands of dollars. The plaintiffs had purchased the school land at public auction less than three

months before, and had paid but $540 on the purchase price. Jordan assumed and promised to pay the Chilberg indebtedness, which was in excess of $600. He made no examination of the title, nor of the land itself so far as the record discloses. The plaintiffs were largely indebted and Jordan took an assignment of the property for the purpose of defrauding creditors. In order that there might be no mistake or misunderstanding about it, he signed a written memorandum to that effect. Assuming an indebtedness in excess of the amount paid by the plaintiffs for their equity, knowing nothing of the title to the property or of the property itself, knowing that he could not hold the property against the creditors of the plaintiffs, yet he would have us to believe that he paid $2,000 for a mere shadow. When we consider all these circumstances, his claim is unreasonable and must be disallowed.

The next item in importance is $500, alleged to have been paid to the defendant Morrow by the defendant Jordan at the instance of the plaintiff Ole P. Norgren, as a commission for finding a purchaser for a portion of the land. The alleged purchaser stopped payment on the check given in part payment of the purchase price, and refused to enter into a contract of purchase, without fault on the part of the plaintiffs or any other person, so far as the record discloses. The commission was never earned and the only excuse for its payment is the direction alleged to have been given by Ole P. Norgren. This claim like the former was paid in currency and is evidenced by a similar receipt. We find it not supported by the testimony and the same is disallowed.

The next items in dispute are two payments of $100 each, alleged to have been made to the plaintiffs on account of the sale of two acres of the land to one Giles. One of the items was paid, but in our opinion the other was not, and is disallowed. The items of $4.25 and $25, expenses of a trip to Everett, are not shown to have any connection with the case and are disallowed. Certain items for expenses to Olympia and for attorney's fees in securing the approval of the assign-

ment of the contract by the commissioner of public lands are questioned, but these expenses were incurred with the knowledge and approval of the plaintiffs and the items will be permitted to stand. The other items in dispute are too small in amount to warrant discussion.

We will add, in conclusion, that in our opinion the following payments and disbursements only are established by the testimony:

| | |
|---|---:|
| March 16, 1905 | $50.00 |
| March 16, 1905 | 5.85 |
| March ———— | 20.00 |
| March 28, | 24.00 |
| March 28, | 6.00 |
| March 29, | 100.00 |
| April 1, | 40.00 |
| April 8, | 5.00 |
| April 12, | 25.00 |
| May 5, | 20.00 |
| May 9, | 10.00 |
| May 9, | 75.00 |
| May 29, | 25.00 |
| June 19, | 24.00 |
| June 19, | 5.00 |
| July 1, | 25.00 |
| Nov. 13, | 100.00 |
| Nov. 17, | 75.00 |
| Feb. 26, 1906 | 299.16 |
| March 1, | 83.00 |
| May 20, | 36.00 |

We desire to add a word as to the $200 received on the Giles contract. Giles is not a party to this action and the validity of his contract as against the plaintiffs cannot be determined. Inasmuch as he was not made a party, we presume the plaintiffs do not question his rights. If they do not, and make that fact appear of record in the court below, they will be entitled to an additional credit of $100, being the amount of the pur-

chase price retained by Jordan. If they refuse to confirm the contract, $100 should be added to the above amounts, as they will not be permitted to disaffirm the sale and at the same time claim the benefits arising from the sale.

For the reasons herein stated the judgment of the court below is reversed, with directions to enter a decree directing a reassignment of the school land contract to the plaintiffs and quieting their title as against the defendants, upon the payment of the several sums above mentioned, with legal interest from date of each payment. The $200 received on the Giles contract will be disposed of as above indicated. The plaintiffs will recover their costs in this court.

HADLEY, C. J., FULLERTON, CROW, MOUNT, ROOT, and DUNBAR, JJ., concur.