[No. 7470.   Decided May 4, 1909.]

PEARL OYSTER COMPANY, *Appellant*, v. SEATTLE & MONTANA
RAILROAD COMPANY *et al.*, *Respondents.*[1]

ATTORNEY AND CLIENT—EMPLOYMENT—HUSBAND AND WIFE—COM-
MUNITY PROPERTY—AUTHORITY OF HUSBAND. An attorney was author-
ized to represent a wife in the settlement of condemnation proceed-
ings against community property, where it appears that both hus-
band and wife were parties and served with process, that he was
employed by the husband, as he presumed, to represent both, and
the husband was authorized by the wife to employ counsel in the
case and he understood the attorney was to represent her.

EMINENT DOMAIN—COMPENSATION—WAIVER—EJECTMENT—TO RE-
COVER RAILROAD RIGHT OF WAY—ESTOPPEL. After condemnation pro-
ceedings for a railroad right of way are instituted, the owners may
by oral agreement stipulate as to the compensation and waive their
constitutional right to have it paid before the land is taken; and
after standing by and seeing the land used for railway purposes for
many years, they cannot maintain ejectment.

Appeal from a judgment of the superior court for Skagit
county, Joiner, J., entered November 18, 1907, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action of ejectment. Affirmed.

*Dorr & Hadley* and *Rose & Craven,* for appellant.

*L. C. Gilman* and *B. O. Graham,* for respondents.

DUNBAR, J.—This is an action in ejectment, brought by
the Pearl Oyster Company, a corporation, against the Seattle
& Montana Railroad Company, a corporation, and the Great
Northern Railway Company, a corporation.   The plaintiff
deraigns its title as follows:  It acquired a deed thereto from
William Hedge and wife, and William Hedge and wife
acquired a deed thereto from J. B. McMillan and wife, who
obtained title from the state of Washington.   McMillan and
wife, on the 13th day of September, 1898, entered into a
contract with the state of Washington for the purchase of

[1]Reported in 101 Pac. 503.

these lands, and patent was subsequently issued, viz., on the
28th day of March, 1904, and the deed from McMillan and
wife to Hedge and wife was executed on the 27th day of
April, 1904. The complaint, in substance, alleges ·that, in
the year 1901, the defendants wrongfully and without any
right or license, entered into and upon and took possession of
a portion of said land, viz., the portion in dispute, and there-
upon commenced the grading and construction of a roadbed
for a standard gauge railroad over the entire length of
said strip, and erected and created thereon a permanent bar-
rier between the shores of Samish Bay and the waters thereof;
and that they have wrongfully excluded plaintiff therefrom
and deprived it of possession thereof; alleging certain dam-
ages, which allegations were afterwards withdrawn.

The defendants served a joint answer, which consisted prac-
tically of a general denial of the allegations of plaintiff's
complaint; admitting, however, that they had excluded the
plaintiff and all other persons therefrom, and that since 1901,
they had had the exclusive possession of said strip of land.
They also set forth two affirmative defenses, the first to the
effect that they constructed their line of railway over and
across the premises described in the complaint during the
year 1901; that ever since said date they have been in pos-
session of said property, openly, notoriously, and exclusively,
and during the whole of said time have been using, and are
now using, the property so described as a right of way for
their railway line; that they are common carriers of freight
and passengers; that the premises described in the complaint
are part of the right of way of said railway, necessary to
enable them to perform their duties to the public as a common
carrier, and that at the time the defendants constructed their
said line of railway, no objection was made by the owners of
property, nor did they ever make any protest or objection
to the defendants' occupying and using said property for
railroad purposes; that the said line of railway was fully
constructed and operated at the time plaintiff purchased said

property, and that the plaintiff, at the time of purchase, knew said line of railway had been constructed and was in operation across said property.

For a second affirmative defense it was pleaded that neither the plaintiff nor any ancestor of it, nor any predecessor or grantor of the plaintiff, was seized or possessed of the premises described in the complaint within ten years before the commencement of this action, but the said defendants have been at all times since the year 1901 in possession, etc. The plaintiff filed motions to strike these affirmative defenses, and afterwards demurred to them. The demurrer as to the first affirmative defense was sustained, and overruled as to the second. Subsequently plaintiff filed its reply to defendants' second affirmative defense, denying the material allegations. Thereafter, on the 26th day of March, issues in the case having been joined, defendants asked permission to file an amended answer in the case, to which the plaintiff objected; which objection was sustained by the court, to which the defendants excepted, and the case proceeded to trial. The case was tried by the court, and the issues found in favor of the defendant.

The court made findings of fact and, among other things, found the corporate capacity of the different parties to the action; the deraignment of title as we have indicated in the statement of the case; that on or about the month of June, 1901, the defendant Seattle & Montana Railroad Company filed a petition in the superior court of the state of Washington for the county of Skagit, against said J. B. McMillan and Frances C. McMillan, his wife, to condemn a right of way over and across the premises described in the complaint, and such proceedings were afterwards had that, on the 28th day of June, 1901, said court made an order directing that a jury be called for the purpose of assessing the damages to be paid for such right of way; that nothing further was had or done in such proceeding in court; that on or about the 28th day of June, 1901, the said railroad company and the said J. B. McMillan, for and on behalf of himself and his wife, Frances

C. McMillan, the then owners and holders of said contract with the state of Washington, entered into a verbal agreement whereby it was understood and agreed that, in consideration of the sum of $300 and other considerations, said railroad company might have a right of way over and across, and might construct and operate its railroad across, the premises hereinbefore described; that subsequent to the said 28th day of June, 1901, and immediately subsequent to the making of the agreement above mentioned, the defendants, in pursuance of said agreement and with the knowledge and consent of said McMillan, entered upon and took possession of a portion of the land (describing it), which is the portion occupied by the railroad companies defendants, and created and constructed a roadbed for a standard gauge railroad over and across the entire length of said strip, and thereafter did continuously prosecute the work of construction, and did erect and create upon the entire length of said strip of land a permanent roadbed and grade, and upon the completion of the grade the defendants caused to be placed thereon railroad ties and rails for railway purposes, and have ever since the fall of 1901, continued to and are now continuing in the maintenance and operation of a railway over and across said strip of land, and have been and are now conducting thereupon a general railway business, both passenger and freight; that said strip is, and at all times has been, the same strip of land or right of way which has been and now is occupied and used by the said defendants in the operation of their railway business; that since the defendants entered upon and took possession of said strip of land, they have had and now have open, notorious, and exclusive possession of the same, for the purposes of grading, constructing and operating said road; that the money consideration agreed upon between defendants and plaintiffs has never been paid; that at all times in the findings mentioned said J. B. McMillan and Frances C. McMillan were husband and wife, and that the land described

was purchased with community funds. To these findings of fact the plaintiff excepted.

A careful examination of the record in this case convinces us beyond any reasonable doubt that the findings of the court were justified by the testimony in the case. There is no question whatever but that this contract to take $300 for the right of way was entered into by J. B. McMillan and the railroad companies, and the only question is as to the rights of Mrs. McMillan in the premises, the property being community property. But we are also satisfied from the testimony of Judge McBride, and also from the testimony of McMillan himself, that Mrs. McMillan's interests were legally disposed of. Judge McBride testified, that he was employed in the condemnation proceedings by McMillan; that he presumed he was representing McMillan and his wife; that it must have been that he was representing anybody whom it was necessary to represent in the proceedings. Both Mr. and Mrs. McMillan had been served with summons in the case and, while it does not appear that McBride had any personal talk with Mrs. McMillan, it does appear, even from the testimony of Mr. McMillan, although he stated that his wife did not know anything about this particular tract of land, that she authorized him to employ counsel in the case in which the matter was settled. In answer to the question: "Do you remember whether you employed Governor McBride for Mrs. McMillan or both of you?" he said.

"If there was any matter in law, he was my attorney and took any case I had. If she was involved, I suppose he would represent her as well as me. She would leave the selection of the attorney to me." Q. "You were both parties to that proceeding?" A. "Yes, sir."

In the face of this testimony and of the further significant fact that the appellant did not see fit to summon Mrs. McMillan to testify in the case, it seems conclusive that Mrs. McMillan was represented in the settlement of the controversy, and that she cannot now be heard to complain that her

rights were adjudicated and settled without any representation on her part; and, of course, the appellant can have no greater rights than she had.

Many constitutional questions which are raised by the appellant do not seem to us to be involved in this case.  It is certainly the established law of this state that private property cannot be taken without just compensation having been paid therefor.  But this in no way affects the principle of estoppel or waiver.  Undoubtedly a constitutional right may be waived as fully as any other legal right, and the constitutional right of having money paid for this right of way before the land was taken was certainly waived by the McMillans in this case.  The undisputed testimony shows that, after this arrangement was made, they stood by for many years, saw the land taken possession of by the respondents, vast and expensive improvements placed thereon, and public business inaugurated and carried on for years.  The transaction comprised an executed contract, with the defendants placed in possession.  The testimony is conclusive and undisputed that McMillan told the attorney for the railroad companies that they might proceed with the work and that he would not interfere.  The conclusion that the findings of the court in this case were correct practically decides this case.

In *Kakeldy v. Columbia & Puget Sound R. Co.*, 37 Wash. 675, 80 Pac. 205, in a case involving the same principle involved in this case, although of course different in some of its circumstances, this court said:

"In the case at bar the respondent is a quasi public corporation, a common carrier, possessing the power of eminent domain.  Its railroad was built and in operation before appellant purchased his property.  He purchased the property with knowledge of the existence and operation of the railroad, stood by and saw it operated and improved, without objection, and then, after the lapse of years, brought this suit to enjoin its operation;"

and the court held that it was estopped under the circumstances.  It is contended by the appellant that the principles

enunciated in this case were repudiated in the case of *Slaght v. Northern Pac. R. Co.*, 39 Wash. 576, 81 Pac. 1062. But an examination of that case convinces us that this statement is erroneous, and that the case was decided on questions which had no bearing on the question discussed in the *Kakeldy* case. In the *Slaght* case the court held that a possessory action can be maintained to recover possession of a railroad right of way, used and occupied by a railroad company for its roadbed for public purposes, where proceedings are stayed, and the only effect of the judgment is to compel the company to make compensation for the property taken, the court saying:

"If a judgment in ejectment at law, or decree of injunction in equity, would have the effect of stopping the operation of the railroad, or disabling it from discharging its duties to the public, there would be strong and controlling reasons why such judgment or decree should not be awarded. But, if proceedings are stayed as in this case, and the only effect of the judgment in ejectment is to compel the railway company to make compensation for the property taken, we see no valid objection to such proceeding, on the ground of public policy or otherwise."

So that it would seem that, instead of that case being opposed to the judgment of the court in this case, it sustains it; for this is not an action to compel the railroad company to pay the compensation agreed upon, for the company in this case stands ready and willing to pay that, but it is an action which falls squarely within the first proposition suggested by the court above, viz., that if the action were sustained it would have the effect of stopping the operation or disabling it from discharging its duties to the public.

It is not necessary to discuss *seriatim* the assignments presented in appellant's brief. We think the whole case depends upon the testimony adduced, and that the judgment under the testimony should be affirmed.

Rudkin, C. J., Fullerton, Mount, and Crow, JJ., concur.