[No. 12961.  Department Two.  March 7, 1916.]

JESSE THOMAS, *Appellant*, v. FRANK J. SCOUGALE *et al.*,
*Respondents.*[1]

ATTORNEY AND CLIENT—COMPENSATION—PERFORMANCE OF CONTRACT
—EVIDENCE—SUFFICIENCY.  The dismissal of an action to recover an
attorney's fee of 25 per cent of the amount recovered by any suit or
compromise of the client's claims is unwarranted, where the evi-
dence is undisputed that the attorney, after having commenced an
action which was abandoned, joined in another action respecting a
mortgage and an accounting due from his client, and by joining in
opposing the adverse interests, accomplished the same result as by
a direct suit, recovering $5,644.45 in cash and a third interest in cer-
tain lands; and it is immaterial that such cash was all consumed in
paying an indebtedness of the client which was an entirely independ-
ent transaction.

MORTGAGES—FORECLOSURE—TITLE ACQUIRED AFTER SATISFACTION.
Where the actual interest of a mortgagee was fully satisfied after
foreclosure, he could obtain no title by the foreclosure sale, and
could convey none by assignment of the sheriff's certificate of sale.

VENDOR AND PURCHASER — BONA FIDE PURCHASER — EQUITABLE
TITLE.  The doctrine protecting *bona fide* purchasers of land with-
out notice applies solely to purchasers of the legal title, and the pur-

[1]Reported in 155 Pac. 847.

chaser of an equitable interest, especially at judicial sale, acquires the property burdened with every prior equity charged upon it.

HUSBAND AND WIFE—COMMUNITY PROPERTY—CONTRACTS BY HUS-BAND—EMPLOYMENT OF ATTORNEY—ACQUIESCENCE BY WIFE. The husband's contract employing an attorney on behalf of the marital community to establish a trust in community lands and recover a share in a joint venture relating to the same cannot be avoided by the wife, as not authorized by her, where she was a party to all the suits brought relating to the matter, was represented by the attorney therein, showed considerable interest and concern in the litigation, and was consulted in regard to it, and the litigation was brought for the benefit of the community and resulted in benefit to it.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered February 10, 1915, dismissing an action for equitable relief, tried to the court. Reversed.

*Fogg & Fogg,* for appellant.

HOLCOMB, J.—Frank J. Scougale, one of the respondents and husband of respondent Cora Scougale, on August 9, 1909, employed appellant as attorney and gave to him the following memorandum in writing:

"Tacoma, Wash., Aug. 9, 1909.

"I hereby retain Jesse Thomas as my attorney to commence an action for me and my wife against Dominic Cavalero and Norval McGhie and their wives to establish my interest in the lands and timber in secs. 20, 29, 19, 30 and 32, twp. 22, N. R. 2 east, and to realize the value thereof, together with damages for breach of the agreement between me and said Cavalero and McGhie when we entered upon the joint adventure for the acquisition of said lands and timber, which were taken in the name of the Gig Harbor Timber (or Lumber) Co., and authorize him to associate with him Fred S. Fogg, and agree to pay my said attorney for his services twenty-five (25) per cent of whatever may be realized by suit, settlement or compromise of my claim in and to said property or damages.        Frank J. Scougale."

Pursuant to the employment, appellant at once commenced an action for his clients as a marital community, for the purposes designated in the employment. Afterwards the action

so instituted came before this court on an appeal from an order granting a change of venue, and was reported in *State ex rel. Scougale v. Superior Court,* 55 Wash. 328, 104 Pac. 607. The substance of the cause of action stated in the complaint was there succinctly set forth, and it was determined that, on the facts alleged, the cause of action was one to establish a trust in real and personal property, and for damages for alleged breach thereof. The cause was transferred to Snohomish county, but it does not appear to have been tried and adjudicated, but was abandoned. Shortly thereafter, one Sandberg, to whom Scougale and wife had, about a year previously, given a mortgage for a large sum, began an action to foreclose this mortgage. The defendants defaulted, and Sandberg took judgment in the foreclosure proceedings for the sum of $13,255.60, principal, interest, attorney's fees, and costs. At the time this suit was commenced, another memorandum was made on the back of the former memorandum between appellant and Scougale, signed by Scougale on May 26, 1910, as follows:

"The within retainer is hereby extended to the foreclosure suit brought by Peter Sandberg a few days ago against myself and wife and Cavalero and McGhie *et al.* upon the same terms and rate of compensation."

That suit was permitted to go to judgment by default on the part of defendants Scougale, appellant representing Scougale in transactions had with the mortgagee and his attorneys; and it appears that, previous to the giving of the mortgage, Scougale had borrowed $2,600 from the Pacific National Bank of Tacoma, and Sandberg had gone upon his note with him, and a mortgage was given to indemnify Sandberg against loss by reason of this note or any future advancements. During the pendency of the action, Sandberg stated to appellant and to Scougale that all he wanted was to be made whole on that note at the bank and saved harmless; that he did not want the property, and that, when he was paid off out of the proceeds received from Cavalero, he

had no further interest in the property. There were about six years' accrued interest on the note and it aggregated $3,936.94. Although an attorney's fee of $1,000 had been allowed in the foreclosure, this was settled with Bates, Peer & Peterson, Sandberg's attorneys, for the sum of $100. These sums, together with $41.30 costs in foreclosure suit, were paid to and received by Bates, Peer & Peterson, attorneys for Sandberg, in satisfaction of his judgment and foreclosure. The interests of Scougale and wife were sold, however, under the foreclosure on January 14, 1911, and bid in by Sandberg for the total amount of the judgment and costs, and afterwards Sandberg assigned his certificate of sale, issued to him by the sheriff of Pierce county, to defendant Schliemann, which appellant says he believes was at the request of Scougale. Schliemann held his certificate of sale during the period of redemption, and on March 21, 1914, the sheriff of Pierce county made, executed, and delivered his sheriff's deed to Schliemann for all the right, title, and interest of the Scougales in and to the premises.

After the adjudication in the foreclosure suit, Sandberg filed a suit against Scougale, Cavalero, and McGhie, and their wives, for an accounting and winding up of the Gig Harbor venture and a division of the property or its proceeds. Appellant's contract of retainer was extended to this action upon the same terms, and appellant, on behalf of Scougale and wife, filed an answer and cross-complaint setting up their one-third interest in the land and timber not covered, as well as that covered, by the Sandberg mortgage. Sandberg's complaint and Scougale's cross-complaint covered substantially the same field as Scougale's first action hereinbefore referred to. The case was tried in Snohomish county, and Sandberg was represented by Messrs. Bates, Peer & Peterson. No effort was made to segregate the interests of Sandberg and Scougale in that action, their combined interests being referred to as "the Scougale interest" or "the Scougale third," and they prosecuted a joint appeal

from the judgment of the superior court to this court (*Sandberg v. Scougale*, 75 Wash. 313, 134 Pac. 1051), and obtained a somewhat more favorable judgment. When the remittitur went down in that case, appellant and Mr. Peer went to Everett and, in conjunction with Mr. Coleman, one of the attorneys for Cavalero, prepared a final decree. Pending the appeal, Cavalero had sold the logging equipment, logs, and piles, and had received a large sum of money subsequent to the time the original decree was entered, and this was taken into account.

The decree after appeal, as prepared and agreed to by the attorneys, awarded to Sandberg and Scougale one-third of the net funds in Cavalero's hands, after being reimbursed for advancing Scougale's third of the original cost of land and timber, with legal interest thereon, one-third of about $3,000 in bills receivable, which were then of doubtful value and of which nothing has been collected, and one-third of the three hundred and sixty acres of logged-off land. Appellant and the attorneys for Sandberg received from Cavalero the sum of $5,644.45 in cash. With this sum they paid Scougale's obligations to Sandberg on account of the note to the bank, with the six years' interest, and the court costs and attorney's fees which Sandberg actually paid out in the foreclosure suit and in the suit for accounting, which took all of the above sum of cash except $388.55, which appellant received and applied as part payment of his fee. He has received no other compensation. The money above mentioned was received from Cavalero and the Sandberg claim paid off in December, 1913. This action by appellant is for his stipulated share of the property, under the terms of his employment, recovered for his clients, and to establish a trust to the extent of his interest in the interest recovered for his clients, and to compel a partition of his interests from all the other interests therein.

One of the allegations of the complaint is that the defendants Prochaska and wife have a right to purchase a certain

described tract of twenty acres, at the price of $60, from the other defendants in the action, and it is conceded that this right is prior to any right of appellant. Another allegation of the complaint is that the interest of the defendants Scougale and wife is an undivided one-third interest in all of the property, subject to the right of Prochaska and wife to purchase the above twenty acres, and subject to the right of appellant to a one-fourth thereof under his contract. Another allegation of the complaint is that the interest of the defendants Schliemann and wife, if any, is simply as trustee for the defendants Scougale and wife. Defendants Cavalero and wife appeared by their attorneys, but expressly disclaimed any interest in the interest claimed by appellant adverse to him. Scougale and wife and Schliemann and wife appeared by the same attorneys, but made separate answers. Schliemann and wife put in issue all the allegations of the complaint, and further affirmatively alleged the foreclosure proceedings hereinbefore referred to, the sale under foreclosure to Sandberg, the assignment of the certificate of sale to Schliemann, which they alleged was in good faith and for value, and without any knowledge or notice of any claim of right, title, interest, or estate in the premises on the part of appellant, and that they were innocent purchasers for value; that the period of redemption expired and the premises were unredeemed. Scougale and wife put in issue all the material allegations of the complaint, and further answered affirmatively that, at all times mentioned, they were husband and wife, and any right, title, interest, or estate which might rightfully be claimed by them, or either of them, was their community property; that the contract made between Frank F. Scougale and appellant was not made by defendant Cora Scougale; that she was not a party thereto nor bound by any of the terms and conditions thereof, and that the contract was ineffectual to create any lien or incumbrance upon the community interest or property owned by the answering defendants.

Appellant's reply to the answer of Schliemann and wife put in issue the affirmative allegations of their answer, and denied that the assignment of the sheriff's certificate to them was for value, or that the assignment if made was for or on behalf of the Scougale community. The answer of defendants Scougale was also replied to, and the affirmative allegations therein contained were denied, except that it was admitted that defendant Cora Scougale did not sign the contract, but alleged that she had knowledge thereof and acquiesced in it. There is no evidence on the part of Schliemann and wife in support of their affirmative allegation of the purchase of the assignment from Sandberg of the certificate of sale under foreclosure for value, in good faith, and without notice. There is no evidence on behalf of Scougale and wife to sustain their affirmative allegations.

Upon the conclusion of the testimony, defendants Scougale and wife and Schliemann and wife moved the court to dismiss the action with judgment in their favor, for the reason that appellant had not made a case sufficient to entitle him to a decree. The motion was granted, the court remarking:

"It seems to me that the plaintiff entered into a contract to take part of the proceeds of suit if he won anything and if he did not he did not get anything, and on the record here he did not. The suit took every bit of the property. I understand the plaintiff's client got nothing out of it."

Appellant then inquired of the court if it interpreted the contract that appellant was not to get anything under it until not only Cavalero's claim but Sandberg's claim was all cleared off, to which the court replied:

"They do not appear to be cleared off. You can probably bring another suit and we will try to arrange the decree so that you will not be prevented from that. You cannot fasten any claim on the real estate. That is all that I am deciding now."

We think the court was in error when it concluded, at the close of the evidence, that appellant's clients got nothing out

of the litigation; and that it was also in error when it con-
cluded that it does not appear that the Cavalero claim and
the Sandberg claim had been paid off.    There is no dispute
of the evidence of appellant that, as a result of the litigation
over the property with Cavalero and McGhie, the net sum
of $5,644.45 in cash and an undivided one-third interest in
certain described lands in sections nineteen and thirty of the
lands heretofore mentioned were acquired by the Scougales.
It is immaterial whether appellant accomplished this by a
direct suit, as at first attempted, or by joining in litigation
with Sandberg against the other parties in interest, which
accomplished the same result.    Appellant's original employ-
ment was to establish Scougale and wife's one-third interest
in the property in question.    Scougale's indebtedness to the
bank, for which the mortgage was given to Sandberg to in-
demnify him as surety, was a totally independent transaction.
It did not, and could not, interfere in any way with the es-
tablishment of the trust in favor of the Scougales in all the
property in controversy between them and Cavalero, McGhie,
and the Gig Harbor Timber Company.    Sandberg, however,
having a prior lien against the interest of Scougale and wife,
had a perfect legal right to take action against Cavalero
and McGhie and the timber company to establish his lien
thereon.    Appellant, by joining with Sandberg in that pro-
ceeding, accomplished for the Scougales all that it could
have accomplished by the original suit.    He secured in that
action the interests of the Scougales subject to the lien of
Sandberg.    The lien of Sandberg, although nominally for a
much larger sum, was in fact no greater than his actual
financial interest.    This, as shown by the undisputed evidence
on behalf of appellant, was, as heretofore stated, a total of
$5,255.90, after allowing for the total amount of Sandberg's
actual mortgage, interest, costs, and attorney's fees, and the
costs and attorney's fees expended by him in the litigation
between him and Scougale, Cavalero, McGhie, and the Gig
Harbor Timber Company.    This was all satisfied out of the

cash received and Sandberg had no further interest. Having received his money, he had no title under his foreclosure sale and could convey none to the defendants Schliemann. The contention of the defendants Schliemann, therefore, that they stand in a position of *bona fide* incumbrancers without notice is not tenable. The assignment by Sandberg to Schliemann was probably an evasion and a mere subterfuge. The most which the mortgage could incumber was the equitable estate asserted and thereafter determined to be in the Scougales. The doctrine which protects *bona fide* purchasers without notice is applicable solely to purchasers of the legal title; and the purchaser of an equitable interest purchases at his peril and acquires the property burdened with every prior equity charged upon it. *Shoufe v. Griffiths*, 4 Wash. 161, 30 Pac. 93, 31 Am. St. 910; *Norgren v. Jordan*, 46 Wash. 437, 90 Pac. 597. Especially is this true where they purchased merely under judicial sale.

There is a further reason why the action should not have been dismissed, in that twenty acres of land in controversy was not covered by Sandberg's mortgage nor by the sheriff's deed. It had never been mortgaged or sold, and is part of the three hundred and sixty acres covered by the final decree of the superior court of Snohomish county wherein it was adjudged to belong, two-thirds to Cavalero and one-third to Sandberg and Scougale as their interests might appear. Sandberg's mortgage never having included this twenty-acre tract, the one-third interest therein belongs to Scougale at this time. It is clear that the Scougales got this interest as the result of the litigation conducted for them by appellant.

As to the contention that Mrs. Scougale is not bound by the contract made by her husband with appellant, we think there is no merit in it. The testimony of appellant is not contradicted that Mrs. Scougale showed considerable interest and concern in the litigation, that he saw her one or more times at her house, and that she called him up by telephone one or more times inquiring as to the progress of matters;

and the litigation was certainly brought and conducted for the benefit of the community and resulted in the benefit of the community. She was a party plaintiff or defendant to every suit concerning the matters. She was represented by appellant in all of them. She cannot, under the facts, deny that appellant was her attorney and was representing her under the contract. *Pearl Oyster Co. v. Seattle & M. R. Co.*, 53 Wash. 101, 101 Pac. 503; *Jones v. Jones*, 72 Wash. 517, 130 Pac. 1125.

Appellant very substantially performed his agreement with Scougale to the very great advantage of both him and his wife. "The laborer is worthy of his hire," even if he is only an attorney, and a contract of a business man with an attorney, fully performed by the attorney, ought to be as good, in morals and in law, as any other contract.

The judgment will be reversed, and the cause remanded to the court below with instructions to grant judgment in favor of appellant for the one-fourth of the $5,644.45 recovered in money, less the $388.55 received by him, and establishing his undivided one-fourth interest in the one-third interest of Scougale and wife in the lands described in the complaint, subject to the right of the defendants Prochaska to purchase twenty acres under their purchase option; and that appellant have the amount of his one-fourth interest in the cash money recovered added to his one-fourth interest in the one-third of the land, and that he have partition as prayed. 30 Cyc. 194.

MORRIS, C. J., PARKER, BAUSMAN, and MAIN, JJ., concur.