MATILDA A. GRENNON, complainant-appellant,

*v.*

LOUIS KRAMER et al., defendants-respondents.

[Submitted May 27th, 1932.   Decided October 17th, 1932.]

*Messrs. King & Vogt,* for the complainant-appellant.

*Mr. Charles Handler,* for the defendants-respondents.

The opinion of the court was delivered by

BROGAN, J.

This is an appeal from a decree of the court of chancery. The state of the case discloses the following situation:

On April 3d, 1919, an agreement was executed between Louis Kramer and James G. Marcrum, wherein Kramer undertook to convey certain lands and premises then owned by one Albert W. Brown.   Kramer enjoyed certain rights and privileges in said land and the agreement provided that the said Marcrum, upon acquiring title, should first execute a mortgage to the said Brown in the amount of $9,500, which was to be a first mortgage, and should further pay to the said Kramer the sum of $4,000 in the following

manner: By giving twenty-three promissory notes, all of which were dated April 1st, 1919, and which would become due, monthly, beginning July 1st, 1919, the first three of which were in the sum of one hundred ($100) dollars each, the next six of one hundred and fifty ($150) dollars each, and the balance for two hundred ($200) dollars each. The payment of these notes was to be secured by a mortgage covering the real estate conveyed and was to be second to the mortgage of $9,500 above referred to, and also secured by a chattel mortgage in favor of Kramer, covering the personal property.

On May 15th, 1918, Albert W. Brown and Margaret W. Brown, his wife, conveyed the land in question to James G. Marcrum and wife by deed of warranty and on May 6th, 1919, said Marcrum and his wife executed and delivered to said Albert W. Brown a bond and mortgage in the sum of $9,500. The said Marcrum on May 6th, 1919, executed and delivered to Kramer the chattel mortgage, above referred to, as well as a bond and mortgage in the sum of $4,000 as agreed. The promissory notes were also delivered.

The Kramer mortgage was in fact recorded first so that the record disclosed the Brown mortgage to be second to Kramer's, contrary to the agreement.

The last of the Marcrum notes to Kramer became due May 1st, 1921. The mortgage to Brown did not become due until May 1st, 1923. Marcrum paid off about $1,100 in reduction of the obligation to Kramer.

On October 31st, 1928, Marcrum, for the sum of $2,000, procured an assignment of the mortgage of $9,500 held by Brown. The assignment was first executed by Brown, in blank, and latterly a new assignment was given in favor of Matilda A. Grennon. Now, prior to this transaction, the complainant, Matilda A. Grennon, who is the mother-in-law of Marcrum, loaned him the sum of $2,500. The evidence disclosed that it was with $2,000 of this money that Marcrum procured the assignment of Brown's mortgage to Mrs. Grennon and that it was for this purpose the loan was made. Then it was discovered that the record disclosed

the Brown mortgage to have been filed subsequently to the Kramer mortgage and the complainant filed a bill in the court of chancery to have the mortgage, which she received by assignment from Brown, declared to be a first lien on the premises.

In the answer and counter-claim filed, Kramer takes the position that because the mistake, which made his $4,000 mortgage a first lien, had gone uncorrected for a period of thirteen years, that he now be decreed to be the holder of a first mortgage on the land and premises in question notwithstanding the agreement between himself and Marcrum. He further alleges that because Marcrum paid off the holder of the $9,500 mortgage, he, Marcrum, became in fact the owner of such mortgage which perforce merged with the fee and thereby was extinguished as a lien, and then by way of further counter-claim seeks to foreclose his mortgage as a first lien.

The court decreed that the premises aforesaid be sold in order to satisfy the amount due on the Kramer mortgage, with interest, but subject to the prior claim of Mrs. Grennon in the amount of $2,250 with interest from May 6th, 1931, and that the owner, Marcrum, and his wife be foreclosed from all equity or redemption of said mortgaged premises when so sold, and from this decree the complainant, Mrs. Grennon, appeals.

Complainant's counsel argues four points in this appeal. First, that the appellant, Mrs. Grennon, is entitled to a prior lien in the full amount of the Brown mortgage, namely, $9,500. Secondly, that the Kramer claim was barred by the statute of limitations. Thirdly, Kramer was not entitled to interest, and fourth, that he is estopped from asserting and enforcing his lien.

That the appellant's first point is not tenable is very clear from a reading of the testimony.

One of the exhibits in the case is a letter from Mrs. Marcrum to her mother, the complainant, in which she says:'

"Mr. Brown [holder of the $9,500 mortgage] was up to see Guy [Marcrum] about the money on the first mortgage

on the Andover property and has agreed to let it go for a balance of $2,000, so I will be down Thursday for the money and as soon as Guy gets the mortgage, will bring it to you.

"Guy wants to put in some machinery and will need $500 more, so please get $2,500 in cash.

"He will ask Mr. Brown how to fix the mortgage so it can be used for a loan by you if it is needed  *   *   *."

Now, it is plain that Marcrum, son-in-law of the complainant, was borrowing $2,500 and that it was not in the minds of the parties that Mrs. Grennon was to step into the shoes of the mortgagee, Brown.  This is further evidenced by the fact that the testimony discloses that Marcrum gave his mother-in-law at this time a note for $2,500.

If Mrs. Grennon was in fact the purchaser of the Brown mortgage and such was the intention and understanding of the parties, manifestly the promissory note would have been unnecessary and would never have been given.

The testimony further discloses that Marcrum paid the complainant interest on the sum of $2,500 only and not on a $9,500 obligation.

The mortgage in question was collateral security for her loan and nothing more.  To hold otherwise would work injustice, hardship and inequity upon the holder of subsequent encumbrances.

The authorities are quite uniform on this proposition.

"The mortgage is regarded primarily as a security; the debt is the principal fact, and the mortgage is collateral thereto;  *   *   *" *3 Pom. Eq. Jur. (4th ed.)* § *1181.*  To the same effect *20 Am. & Eng. Encycl. L. (2d ed.) 900* § *3 subdivision 2.*  See, also, *Shields* v. *Lozear, 34 N. J. Law 496* (at *p. 503*) ; *Osborne* v. *Tunis, 25 N. J. Law 633* (at *p. 651*) ; *Montgomery* v. *Bruere, 4 N. J. Law 295* (at *pp. 309, 320*) ; *Bell* v. *Fleming's Executors, 12 N. J. Eq. 13; Magie* v. *Reynolds, 51 N. J. Eq. 113* (at *p. 117*).  See, also, *Permanent Supplement to R. C. L. 4657* § *165 2-A,* citing *Thomas* v. *Scougale, 90 Wash. 162; 155 Pac. Rep. 847; Ann. Cas. 1918 ch. 452:* "The lien of a mortgage is no

greater than the actual debt secured and the fact that the mortgage is given for a much larger sum cannot enlarge it beyond the true consideration." See, also, *Tate* v. *Security Trust Co., 63 N. J. Eq. 559; Farnam* v. *Burnett, 21 N. J. Eq. 87* (at *p. 89*).

The disposition of this question, it seems to us, substantially disposes of the complainant's appeal.

The argument that the defendant's claim is barred by √ the statute of limitations has no merit for even though the notes themselves be outlawed by lapse of time under the statute certainly the collateral security to these notes, that is, the mortgage, was not barred. See *Colton* v. *Depew, 60 N. J. Eq. 454; Lembeck and Betz Brewing Co.* v. *Krause, 94 N. J. Law 219.*

The other two points of the defendant that Kramer was not entitled to his interest and is estopped have no merit.

While it is true that the notes themselves which were given by Marcrum to Kramer were marked "without interest," certainly interest begins to run when these obligations are not met on their due date. *Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co., 90 N. J. Eq. 515; John Agnew Co.* v. *Paterson Board of Education, 83 N. J. Eq. 49.*

The point that the defendant Kramer is estopped from asserting his rights has been disposed of by our discussion of the main question above. Just how this claimant may be estopped from asserting his rights is not clear. Certainly, the mortgage which he holds as collateral security to the debt may be foreclosed at this time. He is not estopped by statutory bar nor by conduct nor the intervention of any right.

The decree of the court of chancery is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.