ROBERT P. GETTY, et al., Appellants and Respondents, *v.* JEREMIAH DEVLIN, et al., Executors, etc., Impleaded, etc., Appellants and Respondents.

Plaintiffs' complaint alleged, in substance, that D. and three others owning interests in oil lands, which had, cost them about $26,000, in pursuance of a scheme to dispose of their interests at a greatly enhanced price, prepared a subscription agreement, by which those subscribing agreed to pay the sums subscribed by them respectively, to be used for the purchase of such interests, at the price of $125,000, the subscribers thereafter to organize a corporation. D. undertook to receive the sums subscribed, as trustee for the purpose of making the purchase. Each of them subscribed $5,000, and caused others to sign, whose subscriptions were marked paid, but which were not intended to be and were not paid. Plaintiffs and others were induced to subscribe and to pay their subscriptions in ignorance of the facts, and by representations and in the belief that the devisers of the scheme intended to become joint purchasers with them. The moneys paid in by the *bona fide* subscribers were received by D. and divided with his associates  A corporation was afterwards organized, the property transferred to it and stock issued to the subscribers in proportion to the amount subscribed. *Held*, that the associates in the fraudulent scheme were at least liable to account to the *bona fide* subscribers for the profits made by them upon the sale to the corporation; that such an accounting was a proper subject for the cognizance of a court of equity; and every person interested in the result, whether as liable to pay or as entitled to participate, was a proper party thereto; that, therefore, an equitable action for the purpose of such an accounting was properly brought by two or more of the *bona fide* subscribers claiming as such, and also as assignors of other subscribers, against the personal representatives of D., and against his associates, all the other subscribers being made parties defendant; that the estate of D. was liable to refund to the *bona fide* subscribers not only their due proportion of the profits he had himself realized, but also of the fund which he had received as trustee and misappropriated by paying it over to those privately interested with him.

Plaintiffs also claimed to rescind the agreement and to recover back the whole sum paid by them and their assignors. *Held*, that an action simply for that purpose might be subject to the objection of a misjoinder of parties and causes of action.

(Argued June 20, 1877; decided September 25, 1877.)

THESE are cross appeals by plaintiffs and by defendants, the executors of Daniel Devlin, deceased, affirming a judg-

ment in favor of plaintiffs and certain of the defendants of the General Term of the Supreme Court in the first judicial department, entered upon a decision of the court on trial without a jury. (Reported below, 9 Hun, 603; reported on a former appeal, 54 N. Y., 403.)

This was an action for equitable relief. The complaint alleged and the court found in substance, that prior to February 22, 1865, Daniel Devlin, deceased, whose executors are defendants herein, with defendants Bryan, Askenburgh and Atwood, were the owners of certain interests in oil lands in the state of Ohio, which had cost them the sum of $26,200. With a view of disposing of the same at a greatly enhanced price, and in pursuance of a scheme devised for that purpose, they caused to be prepared the following instrument:

"We, the undersigned, do hereby subscribe and agree to pay forthwith the amounts set opposite our names, for the purchase of property in Washington, Monroe and Athens counties, Ohio, as per memorandum annexed, being leasehold interest in 745 acres and 207 acres in fee, at the sum of one hundred and twenty-five thousand dollars ($125,000), payments to be made to Daniel Devlin, Esq., at Broadway Bank, trustee for the purchasers, in whose name the title to property shall be taken, said property to be put into an association for development upon such terms as the subscribers may elect after this subscription is completed.

"New York, 22d February, 1865."

Appended to which was a description of the property. Each of the owners subscribed $5,000, but they did not intend to and did not pay their subscriptions.

The firm of R. P. Getty, composed of the present plaintiffs, subscribed $5,000. The firm of J. E. Amelung & Sons, the members of which were formerly plaintiffs, subscribed $5,000, and James H. Holcomb, formerly a plaintiff, subscribed $5,000. The present plaintiffs having purchased the claims of their co-plaintiffs, the action was, by order of the court, continued in their names. The plaintiffs and their assignors were induced to sign the agreement partly by rep-

resentations that the premises had cost $125,000, and by the fact that Devlin and his associates had signed in the character of co-purchasers, they not being informed, and being ignorant of the facts. Various other persons, who were also made defendants, subscribed, some of them in good faith, others at the suggestion of the devisers of the scheme, without any intent on their part of paying their subscriptions, and who did not pay. Plaintiffs, their assignors, and the other *bona fide* subscribers, believing the other subscriptions to have been made in good faith, paid their subscriptions to Devlin, who divided the same with his associates, he retaining $17,500.

In March, 1865, a meeting of the subscribers was had, and steps taken to organize a corporation, which was subsequently organized under the name of The Federal Oil and Coal Company, with a nominal capital of $1,000,000, divided into shares of ten dollars each. The property was conveyed to the company for the capital stock, which was transferred to Devlin in trust for the subscribers. Of the stock, 20,000 shares was reserved for working capital, and the balance distributed among the subscribers, fictitious as well as *bona fide*, in proportion to the sums subscribed by each. After discovery of the fraud, plaintiffs and their assignors executed and delivered to the executors of Devlin (he having died before such discovery) releases of the shares of stock transferred to them, and demanded repayment of their subscriptions.

As conclusions of law, the court found that the executors of Devlin and his three associates were chargeable with the amounts paid by the plaintiffs and their assignors and others of the *bona fide* subscribers, less their proportionate share of the actual cost of the property.

The defendants who were sought to be charged demurred to the complaint, upon the ground of misjoinder of parties, plaintiffs and defendants, and misjoinder of causes of action. The demurrer was overruled. Judgment was entered in accordance with the findings.

Further facts appear in the opinion.

*F. N. Bangs*, for the plaintiffs.    There was no misjoinder of parties or causes of action.    (*Tradesmen's Bank* v. *Merritt*, 1 Paige, 302; *Hallett* v. *Hallett*, 2 id., 15; *Bailey* v. *Inslee*, id., 278; *Robinson* v. *Smith*, 3 id., 231; *Clarkson* v. *De Peyster*, id., 320; *Bailey* v. *Burton*, 8 Wend., 339; *Dean* v. *Chamberlain*, 6 Duer, 691; *Simar* v. *Canaday*, 53 N. Y., 305.)    Whether Daniel Devlin personally perpetrated any actual fraud or not, it was competent to show that plaintiffs had been induced by the fraud of others to place money in his hands for which he gave no equivalent.    (*Bridgman* v. *Green*, 2 Vesey, 627; *Leslie* v. *Willey*, 47 N. Y., 650; *Van Allen* v. *Am. Bank*, 52 id., 1; *Life Ins. Co.* v. *Minck*, 53 id., 144; *Disbrow* v. *Mills*, 1 Hun, 132; *Beecher* v. *Gillespie*, 6 Bened., 356; *Seymour* v. *Wilson*, 14 N. Y., 570; *Getty* v. *Devlin*, 54 id., 411; *R. R. Co.* v. *Boody*, 56 id., 461; *Blake* v. *R. R. Co.*, id., 491; *Hitchens* v. *Cosgrove*, 4 Russ., 562; *Conybeare* v. *N. B. L. Co.*, 4 DeG. [F. & J.], 578; *Blake's Case*, 34 Beav., 639; *Rex* v. *Bernard*, 7 C. & P., 784; *Foss* v. *Harbottle*, 2 Hare, 461; *Rawlins* v. *Wickham*, 3 DeG. & J., 304; *McLanahan* v. *Ins. Co.*, 1 Pet., 185; *Peter* v. *Wright*, 6 Ind., 183.)    Devlin and his executors were liable to account to plaintiffs.    (*Duval* v. *Covenhoven*, 4 Wend., 565; *McCrea* v. *Purmont*, 16 id., 460; *Dias* v. *Brunell*, 24 id., 9; *N. Y. Ins. Co.* v. *Roulet*, id., 505; *Curtis* v. *Smith*, 6 Blatch., 543; *Sortore* v. *Scott*, 6 Lans., 276; *Dill* v. *McGehee*, 34 Ga., 438; Perry on Trusts, § 166; *Mayne* v. *Griswold*, 3 Sandf., 463; *Flagg* v. *Mann*, 3 Sumn., 186; *Penneman* v. *Munson*, 26 Vt., 164; 2 R. S., 113, §§ 2, 3, 5.)    Plaintiffs were entitled to recover the whole amount of their own subscriptions, and those of their assignors.    (*Conkey* v. *Bond*, 36 N. Y., 428; *Cleveland* v. *Pollard*, 37 Ala., 556.)    The contract was rescindable for non-performance.    (*Lawrence* v. *Vandewater*, 51 N. Y., 676; *Mason* v. *Bovet*, 1 Den., 69; *Gray* v. *N. Y. & S. O. Co.*, 3 Hun, 392; *Hammond* v. *Pennock*, 61 N. Y., 145; 43 id., 452; 55 id., 211· *Hornor* v. *Hanks*, 22 Ark., 572.)

*John E. Develin*, for the defendants. The gravamen of the action was fraud and not a violated contract. (54 N. Y., 412, 413, 416; *Degraw* v. *Elmore*, 50 id., 1; *Ross* v. *Mather*, 51 id., 108; *Barnes* v. *Quigley*, 59 id., 265; *Price* v. *Keyes*, 62 id., 378, 382; *Cobb* v. *Hatfield*, 46 id., 533; *Mason* v. *Bovet*, 1 Den. 69.) There was a misjoinder of parties plaintiff. (1 Chit. Pl'd'gs., 11–17; *Jones* v. *Felch*, 3 Bosw., 63; *Wood* v. *Perry*, 1 Barb., 114; *Mead* v. *Mali*, 15 How., 347; *Calkins* v. *Smith*, 48 N. Y., 614; *Allen* v. *City of Buffalo*, 38 id., 280; *Day* v. *Potter*, 9 Paige, 645; *Arthur* v. *Griswold*, 60 N. Y., 145; Code, § 119.) The action could only be maintained and the judgment upheld on the ground of a joint liability on the part of the defendants. (1 Chit. Pl'd'gs., 97–8; Graham's Pr., 62; *Bucknam* v. *Brett*, 35 Barb., 596; *Boyce* v. *Brown*, 7 id., 80; *Un. Bk.* v. *Mott*, 27 N. Y., 636; *Gere* v. *Clarke*, 6 Hill, 350; *Voorhis* v. *Childs*, 17 N. Y., 354; *Richter* v. *Poppenhausen*, 42 id., 373; *Getty* v. *Binsse*, 49 id., 385; *Lawrence* v. *Trustees, etc.*, 2 Den., 577; *Bloodgood* v. *Bruen*, 8 N. Y., 371.) The cause of action was not assignable. (*Zabriska* v. *Smith*, 13 N. Y., 322; *People* v. *Tioga C. P.*, 19 Wend., 75; *O'Donnell* v. *Seybert*, 13 S. & R., 54–56; *Shoemaker* v. *Keeley*, 2 Dal., 213.) The parties to the agreement not being co-partners cannot sustain any action in equity against the executors for a partnership accounting. (*Salter* v. *Ham*, 31 N. Y., 321; Story on Part., §§ 81–91; 3 Kent's Com., 25; *Porter* v. *McClure*, 15 Wend., 192; *Sage* v. *Sherman*, 2 N. Y., 427; *Chester* v. *Dickerson*, 54 id., 1.) There being a plain, complete and adequate remedy at law, an action of an equitable nature could not be maintained. (*Lynch* v. *Willard*, 6 J. Ch., 343; *Minturn* v. *F. L. & T. Co.*, 3 N. Y., 498; *Livingston* v. *Harris*, 11 Wend., 336; *Perrine* v. *Striker*, 7 Paige, 602; *Allerton* v. *Belden*, 49 N. Y., 373, 377; *Bradley* v. *Bosley*, 1 Barb. Ch., 125; *Shepard* v. *Sandford*, 3 id., 127; *Brookman* v. *Hamill*, 46 N. Y., 636.) Devlin was not such a trustee as would bring him within the equitable jurisdiction of the court. (4 Kent's Com., 305; *F. L. & T. Co.* v. *Carroll*, 5 Barb., 643;

*Fisher* v. *Felds*, 10 J. R., 506; *Johnson* v. *Fleet*, 14 Wend., 175.) Plaintiffs having known the facts before the consummation of the transaction, and then afterwards continuing and completing it, waived the *damnum* and have no cause of action. (*Sar. & S. R. R. Co.* v. *Row*, 24 Wend., 74; *Minturn* v. *Maine*, 7 N. Y., 220; *Bruce* v. *Davenport*, 3 Keyes, 472.)

RAPALLO, J. The general question of the rights of the plaintiffs to recover in this action against the executors of Devlin, and against the defendants Bryan, Askenburgh, and Atwood, was decided by the Commission of Appeals when this case was before that tribunal on the plaintiffs' appeal. (54 N. Y., 403.) The only parties now appealing are the executors, and the leading facts are substantially the same as recited in the opinion of the court on the former appeal. We do not propose to review that decision, and it must stand as the law of the case.

The Commission of Appeals then held, in substance, that Devlin and the three other defendants named, by signing and issuing the subscription agreement dated February 22, 1865, held out to those to whom it should be exhibited for the purpose of inducing them to become subscribers, that they designed to become joint purchasers, with those who should unite in the agreement, of the lands and leasehold estates described in the list annexed, at the price of $125,000. That Devlin undertook to receive the sums subscribed as trustee for the purpose of applying them to the payment of the purchase money. That under these circumstances the four defendants named occupied such a relation to the persons who in good faith agreed to unite with them in the purchase on the terms proposed, as precluded them from making a profit out of their associates by being themselves the vendors of the property, which they had acquired for a much smaller sum than $125,000; and that they were bound to account to those who, in ignorance of the facts, had subscribed and paid in their contributions on that basis, for the profits made

by the purchase of the property and its sale to the joint concern.

Daniel Devlin, whose executors are the only appellants, received the whole fund paid in by *bona fide* subscribers, upon the trust expressed in the agreement of February 22, 1865, to take the title to the property in his own name for the benefit of the purchasers, and put it into an association for development, upon such terms as the subscribers might elect after the subscription should be completed. At this time he was the owner of one-half interest in the leasehold property, which he had purchased of the defendant Bryan for $8,125. He headed the subscription list appended to the agreement, with his own signature for $5,000, although, as found by the court, he did not at the time of signing intend to pay his sub- scription or any sum towards the purchase of the property, and the sums received by him from *bona fide* subscribers he paid over to the defendants Bryan and Askenburgh and Bryan, less the sum of $17,500, which he retained to his own use.

The findings sufficiently show that Devlin, at the time of receiving the payment of these subscriptions and paying them over, was aware of the facts relating to the purchase of the property, and that he did not disclose them to the parties who paid their subscriptions, and it is expressly found that the intent and design of Devlin, Bryan and Askenburgh in signing and acting under the agreement of February 22, 1865, was to effect a sale of the property therein described, at a profit to themselves in excess of the profits which would be realized by the other subscribers, and that in collecting the payments of money under the agreement it was their intent and design to distribute the same among themselves and the defendant Atwood, as sellers of the property, at a profit, which intent they concealed from the plaintiffs and other subscribers.

It is also found that the actual cost of the property to the defendants Devlin, Askenburgh and Bryan, up to February 22, 1865, was $26,200. The details of the representations

by which various parties were induced to subscribe, of the amounts paid in, and of their distribution, etc., and of the conversion of the property into the stock of an incorporated company, and its distribution, etc., are set forth in the findings; but it is not necessary to repeat them here.

There can be no doubt of the liability of the parties thus selling their own property to their associates to account to them at least for the profits made by such sale, nor that such an accounting is a proper subject for the cognizance of a court of equity. In this view of the case, the demurrer to the complaint was properly overruled. The complaint certainly set forth a cause of action, and the objections to the joinder of parties and causes of action were not well founded. Devlin, the trustee of the fund, was clearly liable to refund to his associates, in their due proportion, the profits he had himself realized, and he was also liable for the misappropriation of so much of the fund as he had paid over to those privately interested with him in excess of the actual cost of the property. An accounting was necessary for the purpose of ascertaining the amount of profits to be refunded, and the proportion payable to each *bona fide* subscriber, and to such an accounting it was proper that every person interested in the result, whether as liable to pay or entitled to participate, should be a party. The judgment at Special Term proceeded upon this basis, and while it held the estate of Devlin primarily liable to the innocent subscribers to re-distribute the fund received by him on equitable principles, it also adjusted the equities between the estate and those who had participated with the testator in the profits which were to be refunded. The defendants certainly have no right to complain of this result, which merely compels them to refund the profits they have obtained. The most serious question is that which arises on the appeal of the plaintiffs. They claim that they were entitled to recover the whole amount paid in by them and their assignors, and that the defendants against whom a recovery has been had were not entitled to any reduction on account of the original cost to them of the

property. We have considered the case in this aspect, and while acknowledging the force of the argument that the plaintiffs were entitled to rescind the contract of February 22, 1865, and recover back what they had paid upon it, find difficulties in the way of so modifying the judgment as to enforce that right in the present action. If the action were simply to rescind the contract and recover back the payments, it might be subject to the objections raised by the demurrer, and other difficulties would arise in sustaining the present judgment. We think that substantial justice has been done by the judgment as it stands.

The judgment in favor of the plaintiffs for the interest in the fund assigned to them by the former plaintiffs, Amelung and Holcomb, was, we think, correct. There can·be no doubt that such an interest is assignable. We also think that the judgment in favor of the defendant Donnelly, and the defendants Henffer and Toel, should be sustained, on the grounds stated in the opinions at General Term.

The judgment should be affirmed on all the appeals, without costs as between the plaintiffs and the executors of Devlin, and with costs to the defendants Donnelly, Henffer and Toel against the executors, payable *de bonis*, etc.

All concur.

Judgment affirmed.