## JAMES McEWEN *v.* B. P. SHANNON & CO.

*Fraudulent agreement not enforceable. Money paid under not recoverable. Right of partner to settle. Wife of co-partner not a witness for or against co-partnership.*

1. The court will not enforce the performance of a fraudulent agreement for the payment of money, nor will it assist one paying money under such an agreement to recover the amount so paid.

2. Where several persons for the purpose of inducing each other to have their cream manufactured into butter at a certain place, mutually agree to pay a certain price per pound for this service, a secret agreement between one of these persons and the company, which is to do the manufacturing, that the cream of that person shall be manufactured for a less price is fraudulent.

3. One of the defendants made such an agreement with the plaintiff and subsequently and while the agreement was in force formed a partnership with the other defendant. In settlement of subsequent dealings between the plaintiff and the co-partnership, the first named defendant allowed the plaintiff the amount due him under the secret agreement, thus finding a small balance due from the co-partnership, for which a due bill was given. *Held,* that the plaintiff might recover according to the settlement, it not appearing that either the defendant firm or that member of the firm who made the settlement were insolvent.

4. The wife of a co-partner is disqualified to the same extent in a suit against the co-partnership that she would be were the suit against her husband alone.

Assumpsit. Heard at the February term, 1892, Start, J., presiding, upon the report of a referee. Judgment *pro forma*

for the defendants to recover $106.92. The plaintiff excepts. The opinion states the case.

*W. W. Miles* and *H. F. Graham*, for the plaintiff.

If the contract was illegal a payment under it cannot be recovered. *Burt* v. *Place*, 6 Cowen 431 ; *Foote & Stone* v. *Emerson*, 10 Vt. 337.

One partner can bind the firm as to all acts relating to the business. *Winship* v. *U. S. Bank*, 5 Peters, 525-561 ; *Sandilands* v. *Marsh*, 2 B. & Ald. 673 ; *Bond* v. *Gibson*, 1 Camp. 185.

The wife of B. P. Shannon was not a competent witness. *Carpenter* v. *Moore*, 43 Vt. 392 ; *Labaree* v. *Wood*, 54 Vt. 452 ; 2 Best Ev. 310 ; 9 Am. Enc. Law 806.

*Bates & May*, for the defendant.

The partnership of Shannon & Son was under no obligation to carry out and never assumed the obligation of B. P. Shannon. *Lyndon Mill Co.* v. *Lyndon Inst.*, 63 Vt. 581.

B. P. Shannon had no right to offset the amount due under the secret agreement in the settlement with Shannon & Son. 1 Lindley Part. 292 et seq ; Passons Part. 163 et seq ; *Warden* v. *Newdigate*, 52 Am Dec. 567.

The secret agreement was illegal. *Gardner* v. *Morse* 25 Maine 140 ; *Fitzgerald* v. *Railroad Co.*, 63 Vt. 169 ; *Atlec* v. *Fink*, 42 Am. Rep. 385 and note ; *Freeman Ch. Ass'n* v. *Bergham*, 13 La. An. 209 ; *Woodman* v. *Innes*, 27 Pac. Rep. 125 ; Add. Torts, s. 220, 225.

The wife of B. P. Shannon was a competent witness. *Dawson* v. *Waite*, 41 Vt. 626 ; *Bradish* v. *Belknap*, 46 Vt. 1 ; *State* v. *Bridgeman*, 49 Vt. 202 ; R. L. s. 1000 ; *Willey* v. *Hunter*, 57 Vt. 479 ; *Peaslee* v. *McLow*, 82 Mass. 488 ; *Gay* v. *Johnson*, 45 N. H. 587 ; *Carlisle* v. *Sheldon*, 38 Vt. 440 ; Dic. Par. 154 ; *Douglas* v. *Gardner*, 63 Me. 462 ; *Arnold* v. *Renshaw*, 11 N. J. L. 318 ; *Gibbs* v. *Bryant*, 1 Pick 118 ; *Sheldon* v. *Quinlen*, 5 Hill 441.

The opinion of the court was delivered by

ROSS, Ch. J. From the report of the referee and auditor, it appears, that, in the spring of 1888, the defendant, B. P. Shannon and others were interested in having a creamery established in the town of Craftsbury. For its establishment it was necessary to induce the farmers in the vicinity to adopt uniform regulations for producing pure cream, by the use of the Cooley Creamers ; and to patronize a creamery for its manufacture into butter. It could not be expected that one patron would pay more than another for gathering and manufacturing cream into butter. Hence a uniform charge for this work was essential. The plaintiff was an influential dairyman in the vicinity. The defendant, B. P. Shannon, desired to put in the creamery, gather and manufacture the cream into butter. The promoters of the scheme, among whom was the defendant, B. P. Shannon, established the price of four cents per pound for gathering the cream and manufacturing it into butter. To secure the influence of the plaintiff and to induce him to sign the common agreement to furnish cream from his dairy to the creamery to be established by the defendant, B. P. Shannon, to be gathered and manufactured into butter at four cents a pound, a secret agreement was entered into, that, while the plaintiff should enter the association, and sign the common agreement, and to appearance pay four cents per pound for gathering and manufacturing his cream into butter, he was to be paid back three cents per pound, or have his cream gathered and manufactured for one cent per pound. This was the agreement between the plaintiff and B. P. Shannon for 1888. During that summer Arthur Shannon, the son of B. P. Shannon, became interested in operating the creamery, but was not informed of the secret agreement between his father and the plaintiff. During all that year the plaintiff in the settlements from time to time, made through the association of which he was an officer, allowed the defendants four cents per per pound for gathering and manufacturing his cream. In

December of that year B. P. Shannon without the knowledge of his son and partner, to induce the plaintiff to sign the common agreement and to influence others to sign, to patronize the creamery for the year 1889, and to pay for gathering and manufacturing the cream into butter four cents per pound, entered into a secret agreement to purchase the plaintiff's butter for that year for twenty-five cents per pound. The plaintiff signed the common agreement and in the settlements received his proportionate share of the money received, deducting for gathering and manufacturing the cream into butter four cents per pound. By the common agreement the butter resulting from the manufacture of the cream furnished by the plaintiff remained his property. It is found that the son would not have become a party to the last secret agreement if he had been consulted in regard to it. It was signed by the name of the partnership. The defendants purchased of the plaintiff some butter in the winter of 1889 which did not fall within either of the common agreements. The plaintiff had also had property of the defendant which did not fall within the common agreements. In October, 1889, the plaintiff and defendant, B. P. Shannon, undertook to settle for the winter butter, and the draw-back of three cents per pound on the butter manufactured for the plaintiff in the season of 1888, and certain charges which the defendants had against the plaintiff. They went so far as to find a balance of $29.53 due the plaintiff. For this balance the wife of B. P. Shannon wrote and delivered to the plaintiff his exhibit B, which reads:

"CRAFTSBURY, Oct. 28, 1889.

To balance due on winter butter, $29.53 (twenty-nine dollars and fifty three cents), to James McEwin from B. P. Shannon & Son."

It is found that there were $6 more due the defendants than was embraced in this settlement, on one of the items included in the settlement. These are the controlling facts found.

The plaintiff seeks to recover the sum embraced in the due

bill, reduced by the $6, and the amount which he. claims is due him by the secret agreement for the cream furnished by him the second year.

The defendants claim to recover on their action in set-off the $6 and what was allowed by B. P. Shannon in the settlement of October, 1889, on the secret agreement for the first year.

1. It is apparent that the secret agreements between the plaintiff and B. P. Shannon, if enforced, would be a fraud upon the other patrons of the creamery. The establishment of the creamery was a *quasi* joint enterprise. In that vicinity it could not be established unless the dairymen could be induced to patronize it pretty generally. This was recognized by the agent of the Cooley system, by B. P. Shannon and by the plaintiff. They assumed that the plaintiff's standing was such that his signature to the common agreements would induce others to sign. It is to be presumed it did induce others to sign. If the secret agreements with him had been known they would have had the opposite effect. By them he was securing an advantage over the other common patrons, while apparently he was sharing the burdens of the enterprise equally with them. When such is the case courts will not enforce the secret agreements, nor help either party in regard to them. It will leave the parties where they have placed themselves. It treats all such secret agreements which work a fraud upon the rights of others as illegal and refuseses to enforce them. *White Mts. R. R.* v. *Eastman*, 34 N. H. 142 and cases cited; *Paddock* v. *Fletcher*, 42 Vt. 389.

In general an action cannot be maintained on an illegal contract, either to enforce it directly, or to recover money paid on it after its execution. *Webb* v. *Fulchire*, 3 Ired. 485, (40 Am. Dec. 419); note to *Boyd* v. *Barclay*, 34 Am. Dec. 762.

A contract is illegal when it violates good morals, or is opposed to public policy, or is infected with fraud, or violates the provisions of a public statute. *Ohio L. I. & T. Co.* v. *M. I. & T. Co.* 11 Humph. 1, (53 Am. Dec. 742, and note); *Bank of*

*New Haven* v. *Perkins*, 86 Am. Dec. 332. *Schmidt* v. *Barker*, 17 La. Ann. 261, 87 (Am. Dec. 527); *Bowman* v. *Gonegal*, 19 La. Ann. 328, (92 Am. Dec. 537); *Tatum* v. *Kelley*, 25 Ark. 209, (94 Am. Dec. 717.)

The common law, unless modified by statute, when applicable, is the law of this State by Statute R. L. 689.

Conveyances of property in fraud of creditors were void by common law, as well as by statute, and courts would not interfere to relieve either party. *Martin* v. *Martin*, 1 Vt. 91 ; Roberts' Digest, 345 ; *placitum* 19. Having received what was due him under the common agreement for cream furnished the second year, this Court will not aid the plaintiff to recover, what would be due him on the second year's business under the secret agreement, which if enforced would give him an advantage over the other patrons of the creamery, and for that reason was fraudulent as to them.

2. For like reason this Court will not aid B. P. Shannon to recover back what he paid the plaintiff on the secret agreement of the first year's business. But the defendants contend that inasmuch as the son was not a party to the secret agreement of the first year, B. P. Shannon had no right against the defendants, as partnership, to apply credits due them, as such partnership, from the plaintiff to settle what was due from B. P. Shannon to the plaintiff by the secret agreement of the first year. This suit is not brought to settle the partnership business between B. P. Shannon and his son. Neither does it appear that the defendant B. P. Shannon, nor, that the partnership is insolvent. If B. P. Shannon appropriated partnership credits to pay the plaintiff what he owed him by the terms of the secret agreement the first year, it does not appear but that he is able to account therefor with his son. As a partner B. P. Shannon was fully authorized to settle with the plaintiff for his winter butter. To enforce the balance found due the plaintiff by the settlement for the winter butter, the court is not called upon to enforce the

James McEwen v. B. P. Shannon & Co.

fraudulent secret agreement. Such enforcement leaves the parties to that agreement where they have placed themselves. It compels the defendant partnership to pay the balance due the plaintiff for his winter butter. This is justly his due. But this balance found by the settlement must be reduced by the sum of $6.00 which is found due from the plaintiff to the defendants.

3. The wife of B. P. Shannon was incompetent to testify to the payment of the $30 to the plaintiff. That item must be disallowed to the defendants. Whether the partnership is the defendant as contended, or the partners are the defendants, B. P. Shannon is directly interested in whatever judgment may be rendered.

Any judgment in favor of the plaintiff would be against him personally, and could be wholly satisfied out of his individual property. He would also be personally and directly interested in any judgment against the plaintiff. R. L. 101, removes the disqualification, not of a *party*, merely, but of *interest*. *Bonett* v. *Stowell*, 37 Vt. 258; *Carpenter* v. *Moore*, 43 Vt. 392; *Labaree* v. *Wood*, 54 Vt. 452.

*Judgment reversed, and judgment for the plaintiff to recover $23.53, with interest from Oct. 22, 1889, and costs.*