(75 South. 154)

MASBERG et al. v. GRANVILLE et al.
(6 Div. 345.)

(Supreme Court of Alabama. Feb. 2, 1917.)

1. SPECIFIC PERFORMANCE ⬦⟳57 — VENDOR AND PURCHASER ⬦⟳57—OPTION CONTRACTS —MUTUALITY OF CONSIDERATION.

An option contract to purchase land is valid and enforceable by specific performance, or an action for breach, at the instance of the purchaser, as it becomes binding on both parties when the purchaser elects to perform.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 178; Vendor and Purchaser, Cent. Dig. § 87.]

2. CORPORATIONS ⬦⟳30(3)—FRAUD OF INCORPORATORS—RIGHT TO RECOVER.

Where holders of option contract to purchase land on which they had paid $500 formed corporation putting in land as worth $12,500, and they had agreed to pay $9,500 for it, they were not liable to the stockholders as for fraud, since their contract was of some value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 98.]

3. CORPORATIONS ⬦⟳202—FRAUD—RIGHT TO SUE.

If corporation promoters perpetrated a fraud upon the corporation, it, and not the independent stockholders, could prima facie bring the suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 777–780, 822.]

Appeal from Chancery Court, Jefferson County; A. H. Benners, Judge.

Bill by A. C. Granville and others against Arnold Masberg, the Washington Park Land Company, and others. Decree for complainants, and respondents appeal. Reversed and rendered.

W. S. Pritchard, of Birmingham, for appellants. M. J. Gregg and W. S. Burrow, both of Birmingham, for appellees.

MAYFIELD, J. The bill is by three stockholders of a corporation against the corporation and three other stockholders, and seeks to have certain stock issued to the defendant stockholders canceled as having been issued without consideration, or to compel the defendant stockholders to pay into the corporation the par value of the stock so wrongfully issued. On final hearing relief was denied as against one of the stockholders and the corporation, but was granted as against the other two respondents, and from the decree these two respondents prosecute this appeal.

The undisputed facts, as disclosed by the record, are that in the latter part of 1912 or the early part of 1913 appellant Masberg entered into an option contract with Steiner Bros. to purchase from them a certain tract of land in or near Boyles Station, a suburb of Birmingham, Ala.; that Masberg paid $500 for the option, which amount was to operate as part payment in the event the sale was perfected; that the agreed purchase price was $9,500; that shortly after taking the option Masberg approached Linnehan, the other appellant, and offered to let him into the deal as an equal partner, and after some hesitancy on the latter's part he accepted; that the two conceived the idea of organizing a close corporation, to purchase, develop, and sell the land in question as a business proposition, the profits calculated upon being the advances in the prices at which it was hoped the corporation could sell the lands; that to this end Masberg interested his friend Dr. Elkouric, and Linnehan interested Granville, and the latter interested Zyne; that they all went on the property and inspected it, and agreed to form a

corporation with the capital stock of $12,500, to be divided into 125 shares of the par value of $100 each, and that the corporation should purchase the property at the price of $12,-500, which was done; that appellants each were to subscribe for 30 shares of the stock, and appellees each for 20 shares, the other 5 shares not being subscribed for by any of the organizers, but being held for some purpose, possibly for the attorney who organized the corporation, or to be used in some way promotive of the organization or in payment of expenses, or to be held as treasury stock; that all the stock was issued as fully paid-up stock, and that the land was conveyed by Steiner Bros. to the corporation; that each of the complainants, appellees here, actually paid $1,000 in cash on his stock, being half of the amount due therefor, while the respondents (appellants) actually paid in money only the $500 required to secure the option, but treated their option or interest in the land as worth $3,000, and on this basis treated and argued payments by them as the actual payments of one-half the par value of their shares of stock; that $5,000 of the $12,-500 purchase price at which the land was sold to the corporation was paid to Steiner Bros. out of the cash payments made by complainants upon their stock subscriptions, appellants' interests in the property being treated as paid, and the corporation executed notes to Steiner Bros. for $7,500, the amount of the deferred payment; that these notes were indorsed personally by appellants; Steiner Bros. requiring this before they would agree to convey to the corporation instead of to appellants according to the option contract.

The bone of contention is the $3,000, the difference between the price which Steiner Bros. actually received or are to receive for the land and the price at which it was ostensibly sold to the corporation formed for the purpose of buying it at that figure. The appellants contend that $3,000 was the price which they required to be paid them for their interest or option in the land; that instead of requiring the corporation to pay them the $3,000, and then paying it back to the corporation as payment of one-half the price of the stock subscribed for by them, they merely treated their interest in the land as paid and satisfied, by applying the amount to the payment pro tanto for their stock.

The theory and contention of appellees is that appellants induced them to believe that they had actually paid $3,000 on the land, when in fact appellants had paid only $500, that a fraud or wrong was thus perpetrated on appellees, leading to their participating in the formation of the corporation to purchase, and which did purchase, the land at the price of $12,500; whereas the land could have been purchased for $9,500.

We are unable to find in this record, after careful and repeated examinations of all the evidence, any facts established which show that appellants ever represented to appellees, or any one of them, that appellants, one or both, had actually paid $3,000 or any other sum on the land purchased by the corporation. Appellants, one or both, did represent to appellees, or some of them, that appellants had an interest in the land to be purchased to the amount of $3,000, but never (that we can find) that they had actually paid that amount to Steiner Bros. or any other person. In truth and in fact they did have a valuable interest in the land, in that they had an option to purchase it at the price of $9,500, and had paid $500 for this option or interest therein. If the land was in fact and in truth worth $12,500, then their interest was worth in truth and in fact $3,000. All of the parties and witnesses, including the complainants themselves, say that the land was in fact worth $12,500, which the corporation and the complainants agreed to pay. When appellants had with Steiner Bros. a contract for which they had paid $500, or even a gratuitous option, to purchase land worth $12,500 at the price of $9,500, the value of this contract was the property of the appellants, just as much as if the difference in price had been separate, distinct, tangible property. When the negotiations between these parties began, this difference of value was the property right of appellants, and not of appellees, nor of the corporation, for the corporation had no existence. If it amounted to $3,000, and the undisputed evidence shows that it did, then there was no more wrong in procuring the agreement that the corporation to be formed should pay appellants this $3,000 than there was that it should pay Steiner Bros. the $9,500.

It is conceded that no fraud was perpetrated on the corporation because it got value received. It issued stock based on the price to be paid, and appellants purchased 60 shares of the stock at par value, and have paid $3,000 for it, and are ready, able, and willing to pay the other $3,000; so no injury was done, or can be done, the corporation.

If appellants, when they obtained the option from Steiner Bros. had then been acting as the agents of the corporation, or of appellees, then the corporation, appellees, or the principal would be entitled to receive the profits or value of the option, whatever it might be. The contract and its value would be the property of the principal, and not of the agents. But no such relation existed when the option was obtained by appellants. The corporation did not exist, had not been thought of, and neither of the appellees had ever heard of the land or thought of buying it for themselves or for a corporation. When their relations and connections with the land began, the appellants were the owners of this option to purchase, and for it they had paid $500. As before stated, if

the land was really worth $12,500, then their option was worth $3,000. There is shown no reason why appellants should give this $3,000 to appellees or to the corporation. There is no pretense that appellants ever promised or agreed to divide or share this amount with appellees. It appears without dispute that the only profit which the appellees (complainants below) ever expected to receive out of the adventure was their share of the profit inuring to the corporation from buying the land at $12,500 and selling it at an enhanced price. They were not given any promise or assurance that the property could or would be bought for less than $12,500. It is very true that, if appellants had reduced their claims, or given to the appellees or to the corporation their interests and rights in the premises, the property could have been bought from Steiner Bros. at $9,500, but it could not have been bought at that price except by the consent of the appellants.

It may be true that appellants did not fully disclose to appellees the extent, nature, and character of their interest, or how it arose; but it is certain that every one a party to the adventure knew that appellants did have an interest in the land, and that if the corporation purchased the land the appellants' interests should be paid for, as well as the interest of Steiner Bros. Each of the complainants (appellees) was informed by appellants, or by one of the other appellees, that appellants had a $3,000 interest in the land. It may be that appellees, some or all, believed that appellants had actually paid out that much money on the purchase price of $12,500, but there is no evidence that appellants ever told them this; appellants only stated that they had $3,000 in it. The matter is thus stated by one of the complainants on his cross-examination as a witness:

(In answer to the question, "Did the Washington Park Land Company ever pay M. E. Linnehan or Arnold Masberg, or both of them, $3,000 for this interest they had other than giving them stock for it?") "I don't know."

(In answer to this question, "Is it not a fact that when the corporation was organized it was agreed by all the incorporators that Masberg and Linnehan would transfer to the corporation their interest in this real estate for the sum of $3,000, and that each of the other three incorporators, I mean, Granville, Elkourie, and Zyne, could pay in the sum of $1,000 cash for their interest in the corporation?") "I don't remember it that way; I remember that Masberg and Linnehan had $3,000 in it; we supposed they had it; that is, it was represented to us that way, and when the company was formed and stock given out they showed they had, by the deed. That was the only proof I had."

There is a difference in the details, and in the immaterial statements, as to what was said by and between the various parties, in the promotion of this adventure among them; but the above quotation from the examination shows the understanding and contention of both the appellants and the appellees.

While there is much testimony in this record, detailed by many witnesses thoroughly cross-examined, there is nothing to indicate that each witness has not testified fully and truly concerning all the facts inquired about, as he understood and believed them to be. It was a business or an adventure as to which most of the parties were novices, they knowing nothing of the details necessary to the forming of a corporation, or to the acquisition of stock therein, or to the corporation's acquiring the land. The deed made by Steiner Bros. to the corporation shows a cash consideration of $5,000 paid, and the taking of notes for the balance of $7,500 due, which notes were indorsed by appellants. Two thousand dollars of this only went to Steiner Bros., and $3,000 went to appellants for their interest. This latter amount, however, was considered and treated as being paid into the corporation by appellants as half-payment for their 60 shares of stock.

The whole trouble seems to have proceeded from the fact that appellees thought at the time of the transaction that appellants had theretofore contracted with Steiner Bros. for the purchase of this land at $12,500, and actually paid in cash $3,000 of this amount, and that the forming of the corporation was simply the perfecting and carrying out of the plan under which appellants, one or both, had taken the option of Steiner Bros.; whereas, as a matter of fact, the corporation was really paying appellants $3,000 for their option, and appellants were having Steiner Bros. to convey to the corporation instead of to them individually, under the conditions before adverted to. And it was this misapprehension, obviously, that aroused the suspicion of appellees.

But surely appellants were in good faith and good conscience entitled to something for their option, if it had value (and it is conclusively shown that it had), and for their thus becoming indorsers on the corporation's notes for the $7,500 and interest thereon. They certainly put into the corporation this much of value, against the $1,000 paid in by each of appellees, and became liable to pay much more to and for the corporation than did appellees. What they had done or were to do in originating and promoting the adventure, as agreed to by all, was to be treated as of the value to the corporation of $3,000; the only difference being, as for what services rendered or what things done, the $3,000 was to be paid them. If, as before stated, appellants had had or owned no pecuniary interest in the property, and had originally bought it for the corporation or for the joint interest of themselves and associates, at the price of $9,500, but, as a subterfuge, had procured the owner to have the deed recite a consideration of $12,500, and required their associates to pay all or a part of the $3,000 difference to appellants, they would then be liable to the corporation or to

their associates for the money so wrongfully required to be paid.

This, however, was not the case made by this record. When the negotiations began with the associates looking to the purchase of the lands, and to the formation of a corporation for that purpose, the associates, each and all, were aware that appellants then had an interest of some kind in the land, and that it was valued by its owners (appellants) at $3,000, and that of the purchase price, $12,500, the appellants were to receive $3,000, and appellants have never claimed, and do not now claim, more than the $3,000. It may be that their interest was not worth $3,000; but, so far as this record informs us on the subject, every witness as to this phase of the case either directly or indirectly testified that it was worth that much or more; that is, all the witnesses' testified that the land purchased was worth $12,500. These appellants had paid $500 for the option to purchase it at $9,500; consequently the difference between their option price and the actual value of the land was the value of appellants' interest or their option.

[1] The law is well settled in this state that appellants' option contract with Steiner Bros. was a valuable and enforceable contract by either specific performance or an action as for breach of contract. Morris v. Lagerfelt, 103 Ala. 608, 15 South. 895; Ross v. Parks, 93 Ala. 153, 8 South. 368, 11 L. R. A. 148, 30 Am. St. Rep. 47; Moses v. McClain, 82 Ala. 370, 2 South. 741; 5 Mayf. Dig. 729, and cases cited. See, also, 6 Mayf. Dig. 687–8, and cases cited. Steiner Bros. therefore could not have conveyed the land to the corporation without the consent of appellants without becoming liable to appellants to the amount or value of their interest; and if the corporation had purchased without notice of appellants, it also would have been liable to appellants as for the value of their interest.

[2] Steiner Bros. explain the discrepancy between the consideration as recited in the deed and the real consideration to them by saying that appellants had an equity in the land worth $3,000, and that the recited consideration included the value of this equity. If this amount of $3,000 had been in fact paid to Steiner Bros., and Steiner Bros. had then paid it to appellants in satisfaction of their equity, and appellants had thereupon paid it into the corporation for their stock, neither the corporation nor any of the stockholders would have either gained or lost. And what was actually done was in law and effect the same thing.

[3] If, however, we could be in error in our conclusion as to the effect of the transaction and of the law as we have above declared it to be, there is another reason why the complainants must wholly fail in this suit. There is certainly no ground alleged or prov-

en why this thirty shares of stock should be cancelled; and if the appellants should be required to pay for it because what they allege and say was not a payment therefor, then the corporation, and not the stockholders, is the party who prima facie should bring the suit or action to recover it. Of course, there are certain conditions or contingencies in which the stockholders might go into equity and compel payment to the corporation, but no such conditions are alleged or proven. If the $3,000 ought to be paid by appellants, it is due to the corporation, and not to the appellees. If this action ought to be brought. prima facie it ought to be brought by the corporation, and not by the stockholders. Gray v. South & N. A. R. Co., 151 Ala. 215, 43 South. 859, 11 L. R. A. (N. S.) 581; Crow v. Florence Co., 143 Ala. 541, 39 South. 401.

It may be said in conclusion that we have not overlooked the case of Cranor Co., Ltd., v. Miller et al., 147 Ala. 268, 41 South. 678, and Dean v. Oliver, 131 Ala. 634, 30 South. 865, nor the cases cited therein; but we reaffirm the sound doctrine therein announced and quoted.

" 'The general rule is that the relation of the promoter to the corporation and its members is one of trust, and he must act in all things fairly and openly.' Yale v. Wilcox, 64 Conn. 101 [29 Atl. 303] 25 L. R. A. 90, and note [42 Am. St. Rep. 159]. 'Promoters who acquire property to be used by the corporation wholly at the cost of those who pay for their shares, and retain for themselves a majority of the stock, which cost them nothing, will be required to pay to the defrauded subscribers the damages caused by such action.' Brewster v. Hatch, 122 N. Y. 349, 25 N. E. 505, 19 Am. St. Rep. 498.

"As a rule the remedy of a defrauded subscriber is against the defrauding promoter, and not the corporation; but in the case at bar the respondent the Cranor Company and the complainants constitute the corporation, which seems to have been formed by the Cranor Company as an attempted literal compliance with their contract, and there are no intervening rights of other stockholders to be affected by a cancellation of the sale. The evidence clearly shows that the Cranor Company did not intend at the time of the execution of the contract to put anything of value into the new corporation, and that it was a scheme to get control and management of complainants' property, and the chancellor properly granted the complainants relief. Dean v. Oliver, 131 Ala. 634, 30 South. 865."

Cranor Co. v. Miller, supra.

Both the facts and the averments in both these cases, as well as those in the cases cited in the opinions, were entirely different from the averments, and facts proven in this case.

It results from what we have said that the decree of the chancellor in this case was erroneous, and it is reversed, and a decree will be here rendered denying all relief, and dismissing the bill at the costs of appellees.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.