## No. 9598.

### MOE, ET AL. v. LOWRY, ET AL.

Decided Dec. 6, 1920.   Rehearing denied Jan. 10, 1921.

Action for the cancellation of corporate stock alleged to have been obtained without consideration. Judgment for plaintiffs.

### *Affirmed.*

1. JOINT ADVENTURERS—*Fair Dealing.* Each of several joint adventurers owes to the others absolute good faith, open and honorable dealing, free from deception and concealment.

2. RIGHTS AND REMEDIES—*Decree.* In an action by stockholders of a corporation against one who has obtained stock in the company without consideration, the relief granted is sufficient if there is a correct enforcement of the rights of the parties as shown by the evidence.

3. JOINT ADVENTURERS—*Secret Profit.* In the case of a secret profit by a joint adventurer, he must disgorge all that he surreptitiously acquired.

4. 　　*Accounting for Profits.* One of several joint adventurers who secretly receives back all that he has invested in the enterprise, is left without any interest in the joint adventure and is not entitled to share in the profits or property pertaining thereto.

5. Rights and Remedies—*Rescission.* While it is a corollary of the law of rescission that a party cannot retain property and also recover secret profits; if rescission is impossible, the wronged parties are not barred from all remedy, and that remedy is proper which gives them what the consideration furnished by them actually purchased.

6. Action—*By Stockholders of Corporation.* The rule that a stockholder must demand action by the corporation before suit, has no application in an action by stockholder against stockholder, where the company is only a nominal or formal party.

7. Pleading—*Amendment.* A pleading may be amended to conform to the proof even to the extent of withdrawing an admission.

8. 　　*Misjoinder.* The objection of misjoinder of parties is waived by answer.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. Edwin H. Park, Mr. Thomas H. Gibson, for plaintiffs in error.

Messrs. Dana, Blount & Silverstein, for defendants in error.

*En banc.*

Mr. Justice Denison delivered the opinion of the court.

The defendants in error were plaintiffs below and had a decree cancelling certain stock of defendant Moe in the defendant corporation, The Molybdenum Mines Company.

The material facts are as follows: One Cohen gave defendant Moe an option on certain mining property at $3,000; Moe and plaintiffs, Lowry, Deane and Jackson went in together to purchase the property, plaintiffs to pay half and take half and Moe to pay half and take half, but he told them the price was $6,000. At the time the deed was delivered and the money paid Moe carried out the deception

by giving his check for $3,000 to Cohen, while the remaining $3,000 was paid to the latter by plaintiffs, and Moe and Cohen then immediately went to the bank where Cohen repaid to Moe in currency the amount of the check, less some small adjustments between them.

The suit was based on the above transaction, the plaintiffs taking the ground that they and Moe were joint adventurers, and that therefore he owed them absolute good faith, open and honorable dealing, free from deception and concealment. In this they were right. The cases sustaining their position, if any were needed, are very numerous. The following are some of them: *Reyer v. Blaisdell,* 26 Colo. App. 387, 143 Pac. 385; *McEwen v. Shannon,* 64 Vt. 583, 25 Atl. 661; *Gamble v. Loffler,* 28 S. D. 239, 133 N. W. 288; *Grant v. Hardy,* 33 Wis. 668; *Walker v. Pike Co. L. Co.,* 139 Fed. 609, 71 C. C. A. 593; *Getty v. Devlin,* 54 N. Y. 403; s. c., 70 N. Y. 504; *Bentley v. Craven,* 18 Beav. 75; *Shoufe v. Griffiths,* 4 Wash. 161, 30 Pac. 93, 31 Am. St. Rep. 910.

But defendant Moe claims that the decree cancelling his stock was not the proper remedy.

The mining property was conveyed to Lowry as trustee for himself, Deane, Jackson and Moe. The defendant corporation was formed, Lowry transferred the property to it, and the stock was then issued and divided, one-half to Moe and one-half to the plaintiffs in proportion to their respective payments on the purchase price. Moe's half was thus obtained without payment, consequently he got his interest in the land and his stock for nothing, and plaintiffs alone paid for it. They were, then, in equity, the sole owners of the mining claims and therefore should have been the sole stockholders. The court might have ordered the defendants to transfer the Moe stock to them and the decree could not have been questioned, but exactly the same effect was produced by the cancellation of Moe's stock, because in either case the plaintiffs are left the sole stockholders and so the whole equitable owners of the mining prop-

erty, which is a correct enforcement of their rights as shown by the evidence.

In case of a secret profit by a joint adventurer he must disgorge "all that he surreptitiously acquired." It would be "a reproach to the law" were it otherwise. *Walker v. Pike Co. Land Co., supra.*

What did Moe surreptitiously acquire? It was the whole of his interest, because he got it for nothing, his co-adventurers paying the whole price, he falsely pretending he was paying an equal amount.

In the above case, which was essentially like the present, the court decreed a payment of the money which had been secretly taken and granted a lien on defendant's stock to secure such payment. In that case, however, his stock had been paid for by defendant and the surreptitious profit was additional thereto and in cash. Here the surreptitious acquisition is the defendant's stock. The decree compels him to disgorge it, and, in effect, gives it to plaintiffs who really paid for it. It "equitably belongs to those who have paid the money." *Getty v. Devlin,* 54 N. Y. 403, 415; s. c., 70 N. Y. 504, 511; *Grant v. Hardy,* 33 Wis. 668, 677.

It is suggested that Moe put his option into the joint adventure or syndicate, and that, when he is required to account for his surreptitious acquisitions, he should be allowed something for such option. Why? He asked nothing for it, but agreed to pay his half of the price on equal terms with plaintiffs. When caught in his deceit why should he be permitted to change front and say he ought to be paid or allowed something that the agreement did not contemplate?

It is also suggested that since the secret profits should be accounted for to the syndicate and Moe is one of the syndicate he should share in the property accounted for. That would be true if he had received back from Cohen only part of his share of the price, but when he got all back he was left with no interest in the joint adventure.

It is claimed that the plaintiffs cannot retain the property and also recover secret profits. That proposition is a

corollary of the law of rescission, but where, as here, rescission has become impossible, the wronged parties are not barred from all remedy, and that remedy is proper which gives them what the consideration furnished by them actually purchased. The property had all been transferred to the corporation when the fraud was discovered. *Getty v. Devlin, supra.*

There is no room here for the application of the rule that a stockholder must demand action by the company before suit. This is a suit by stockholders against stockholders and the company is a nominal or formal party. Nothing is taken from it. The decree leaves it neither richer nor poorer than before.

The complaint stated that Moe had expended $98, which should be repaid to him, and tendered it. At the conclusion of the evidence the court granted plaintiff leave to withdraw this statement and tender. This grant is urged as error on the ground that the statement was a judicial admission, incontrovertible in this case. The authorities are that a pleading may be amended to conform to the proof, even to the extent of withdrawing an admission. 16 Cyc., p. 964. We do not think that the court abused its discretion on this point and therefore this was no error.

The misjoinder, if there was one, was waived by answer. *Springhetti v. Hahnewald,* 54 Colo. 383, 131 Pac. 266, and many other cases in this court.

The judgment should be affirmed.

MR. JUSTICE SCOTT, MR. JUSTICE BAILEY and MR. JUSTICE TELLER dissent.

MR. JUSTICE TELLER dissenting:

The majority opinion seems to me to misconceive the foundation of the action. While fraud is alleged this is not an action to rescind; neither is it an action for deceit, for that action can be maintained only when the plaintiff has suffered damage from the deceit. Here the plaintiffs, on an investment of $3,000, obtained a half interest in a

property worth, by their own admission, more than $6,000.

The judgment entered is, in effect, a judgment for damages, since it penalizes Moe by taking from him *all* the stock issued to him. It gives to the other members of the syndicate the entire profits made by Moe, in a suit based upon an equitable principle that a member of a syndicate making a profit, in a matter in which all are interested, must share that profit with his associates.

The suit is properly for an accounting by Moe for profits, which, because of the fiduciary relations between the parties as joint adventurers, he ought to have shared with them. They were members of an association or syndicate, and all profits made by any member thereof belonged to the syndicate. Moe defrauded the plaintiffs not as individuals dealing with him for the purchase of the property,—since it was worth its purchase price,—but as members of an association of which he was a member. The majority opinion states that Moe put nothing into the enterprise, because, we suppose, he furnished no part of the money paid Cohen for the property. Right here is the error in the opinion. If I could agree with that statement, I would concur in the opinion. Moe owned an option on the property, i. e., the right to acquire it for $3,000. It being worth in excess of $6,000, an option at anything less than that sum was a thing of value. This option Moe contributed to the venture, and thus put in a thing of value. The property being of this value, the plaintiffs were not defrauded by the fact that they were induced to pay $3,000, for a one-half interest in it. That is not the ground of their complaint. If it were so, their remedy would be by suit to rescind. They received exactly what they bargained for, and supposed they were getting, a half interest for $3,000. Their injury lies entirely in the fact that Moe made a secret profit, which he retained, instead of dividing it with them. The reason Moe cannot keep all of this profit, as he could equitably have done had he made it with the knowledge of the other members, is that he deceived them, when he owed to them the utmost good faith.

All that equity requires is that he share the profit, it does not justify, under the guise of an accounting for profits belonging to the association, the taking of Moe's entire interest which should include his share in the profits, and such an interest in the property as his option represented in the transaction. The stock issued to Moe represented his investment by the putting in of the option, a thing of value, and the secret profits whatever they were. To deny that he had an interest aside from the profit is to hold that the option had no value. This cannot equitably be done. An owner of an option at a price less than the value of the property optioned, has a property right whose value depends upon the difference between the value of the land optioned and the option price. If this is not clear from a view of the facts, it may be supported by precedent.

In *Masberg v. Granville*, 201 Ala. 5, 75 South. 154, it is held that a man having an option on property at a price $3,000 less than its value, had an interest in the property worth $3,000. The court said of the owners of the option:

"In truth and in fact they did have a valuable interest in the land, in that they had an option to purchase it at the price of $9500, and had paid $500 for this option or interest therein. If the land was in fact and in truth worth $12,500, then their interest was worth in truth and in fact $3,000. All of the parties and witnesses, including the complainants themselves, say the land was in fact worth $12,500, which the corporation and the complainants agreed to pay. When appellants had, with Steiner Bros., a contract for which they had paid $500, or even a gratuitous option, to purchase land worth $12,500 at the price of $9,500, the value of this contract was the property of the appellants, just as much as if the difference in price had been separate, distinct, tangible property. When the negotiations between these parties began, this difference of value was the property right of appellants, and not of appellees, nor of the corporation, for the corporation had no existence. If it amounted to $3,000, and the undisputed evidence shows that it did, then there was no more wrong in procuring the

agreement that the corporation to be formed should pay appellants this $3,000 than there was that it should pay Steiner Bros. the $9,500."

Then follows a statement which distinguishes the case at bar, as made, from the case as supposed in the majority opinion.

"If appellants, when they obtained the option from Steiner Bros. had then been acting as the agents of the corporation, or of appellees, then the corporation, appellees, or the principal would be entitled to receive the profits or value of the option, whatever it might be. The contract and its value would be the property of the principal, and not of the agents. But no such relation existed when the option was obtained by appellants. The corporation did not exist, had not been thought of, and neither of the appellees had ever heard of the land or thought of buying it for themselves or for a corporation. When their relations and connections with the land began, the appellants were the owners of this option to purchase. * * * There is shown no reason why appellants should give this $3,000 to appellees or to the corporation."

It is undisputed that Moe had the option when he first told Lowry about the property. Again the court says:

"But surely appellants were in good faith and good conscience entitled to something for their option, if it had value, and it is conclusively shown that it had."

The Alabama case is on all fours with the instant case, except that it does not appear that appellants ever represented to appellees that they had actually paid $3,000 of the purchase price of the land. For that reason the complainants in the suit were held not entitled to recover. The case is conclusive upon the right of Moe to receive something for his option.

It is undisputed that the property was obtained through the exercise by Moe of his option, thus securing to the syndicate a $6,000 property for $3,000. To the holding that Moe is entitled to no part of the profits, the majority opinion cites a case from the 139 Federal. That case is wholly

different from this case. When the defendant in that case effected a sale, he, appearing as one of the purchasers, had no option, but was secretly acting as an agent of the vendor. He in fact contributed nothing to the venture. He acquired an option afterward to conceal the fraud.

In the Wisconsin case cited, the defendant Hardy, while pretending to cooperate with the plaintiff in the purchase of the property, was, as the court found, in fact the agent of the vendor. He had no option on the property, and concealed from the plaintiff his real relationship to the transaction. The effect of the transaction was to give the defendant a one-fourth interest in the property without paying anything therefor. This he got not by virtue of any option or thing of value which he put into the joint adventure, but by falsely pretending that the price of the land was $8,000 when in fact it was but $6,000. Plaintiff, having discovered the fraud after he had paid $2100 to the defendant for the one-fourth interest in the land, brought suit for damages for deceit and had judgment for $1,000.

None of the other cases cited are like this case in the features which I have hitherto pointed out, in that Moe put his option into the deal, and through his efforts secured the property for the syndicate at half what plaintiffs admit it was worth. They were willing to pay, as their actions show, $3,000 for a one-half interest in the venture. They supposed the property was costing the syndicate $6,000. Their agreement was made on that basis, and they received for their $3,000 exactly what they bargained for, namely, a one-half interest in the enterprise. Had Moe, in fact, paid the $3,000 as he pretended he was doing, the plaintiffs would have been no better off, so far as what they received is concerned, than they are now. Their injury results from, and their cause of action is founded upon, the fact that Moe obtained a secret profit to the extent of the stock issued to him above what he might equitably be entitled to as the owner of the option. Plaintiff's injury was in Moe's not giving them, as members of the syndicate, a share in this profit. The case being one in

equity, the accounting as to these profits should cover the whole question as to what the profits are, including a consideration of the value of the option, and divide them among the members of the syndicate.