STEVENS v. WALKER. (No. 9653.)

(Court of Civil Appeals of Texas. Dallas. Oct. 16, 1926. Rehearing Denied Nov. 13, 1926.)

1. Corporations ⊙⟩⟩314(4)—Trustee of consolidated corporation cannot recover commissions received by corporate president in effecting sale of property to corporation as breach of fiduciary relationship.

Where corporate president, with exclusive agency to dispose of certain oil lands, sold property to corporation formed from four existing corporations in which he was interested, trustee of consolidated corporation could not recover sale's commission received by president in effecting sale as breach of his fiduciary relationship; no fraud being alleged.

2. Pleading ⊙⟩⟩250—Filing of amendment to include recovery for attorney's services, in corporation's suit for commissions paid corporate officer, held properly refused, as setting up new cause of action.

Refusal to permit trustee of corporation, suing for commissions paid to corporate officer in effecting sale of property to corporation, to file trial amendment to recover compensation paid for attorney's services rendered in deal, held properly refused, as attempt to introduce new cause of action not part of original cause.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by M. E. Stevens, as trustee in bankruptcy of the Walker Consolidated Petroleum Company, against A. W. Walker, W. B. Hamilton intervened. Judgment for defendant and intervener. From the judgment in favor of defendant only, plaintiff appeals. Affirmed.

W. H. Flippen and Cecil L. Simpson, both of Dallas, for appellant.

A. W. Walker, Jr., of Austin, for appellee.

VAUGHAN, J. This suit was filed January 7, 1924, by appellant, M, E. Stevens, as trustee in bankruptcy of the Walker Consolidated Petroleum Company, a Texas corporation, to recover $272,482.68, paid appellee by the Texhoma Oil & Refining Company, a Texas Corporation, as commission on the sale of certain oil properties owned by it to the Walker Consolidated Petroleum Company, on or about March 5, 1920. By agreement of the parties, $25,000 then due and unpaid appellee as a part of this commission, was placed in the City National Bank of Wichita Falls, Tex., to await the result of this suit.

W. B. Hamilton, an attorney of Dallas, Tex., intervened in this suit, claiming that he was entitled to $8,000, as attorney's fee, out of the $25,000 so held. This claim was not disputed by appellee Walker, but was contested by appellant. The cause was submitted to a jury on special issues and upon its findings thereon judgment was rendered in favor of appellee, Walker, and intervener, Hamilton. This appeal is prosecuted from the judgment only as to the appellee.

Appellant based his right to recover on two theories: (a) That the appellee was a promoter of the Walker Consolidated Petroleum Company and that, by the transaction through which he received the sum of money sued for, same involved a violation of the fiduciary relationship existing by virtue of the position so occupied by said Walker; and (b) that, on account of the fiduciary relation that appellee bore to three of the companies that went into the merger by reason of being an officer of such companies rather than a promoter of the Walker Consolidated Petroleum Company, appellee was not entitled to receive and retain for his use and benefit the money so paid to him as commission for effecting the sale of the properties owned by the Texhoma Company. By appropriate pleadings appellee joined issue with appellant.

The following material facts were either established by uncontroverted evidence or by the findings of the jury on evidence ample to support same, viz.: On December 20, 1919, appellee, then president of the Texhoma Company, was given the exclusive right by its directors to sell certain of its properties, including leases, tank cars, and a refinery, for which he was to receive a 10 per cent. commission, out of which he was to bear all expenses incurred in making the sale of such properties, including attorney's fees. This commission was reasonable for the sale of oil properties and the percentage customarily charged at that time in the locality where

such properties were located. The Texhoma Company listed and valued separately the properties to be sold; the total price asked amounting to $3,325,000. At the time appellee entered into said contract, the Walker Consolidated Petroleum Company was not in existence nor even in contemplation, and the appellee had no particular purchaser in mind.

Mr. W. B. Hamilton, an attorney of Dallas, was employed by appellee as his attorney, to attend to all legal matters incident to a sale of the properties, and also to introduce him to certain prospective purchasers in New York City, for which services he was to receive from appellee $60,000, and was to bear all of his expenses incident thereto. Appellee secured D. S. Menasco, of Indianapolis, Ind., to assist him in disposing of said properties, said Menasco being acquainted with certain financiers in New York City, and for which services, if a sale was effected, Menasco was to receive $25,000.

Appellee, Hamilton, and Menasco went to New York City about January 3, 1920, and remained until about February 23, 1920, during which time negotiations were had with various prospective purchasers and finally a contract of sale was made and signed on January 16, 1920, by appellee, for the Texhoma Company, as vendor, and Charles W. Ray, for himself and associates, the Henry L, Dougherty interests, as vendees, for a total consideration of $3,325,000. This sale failed of consummation because of the death of a Mr. Levering and the serious illness of Mr. Ray, two of the principal purchasers.

While appellee was negotiating with other parties for the sale of said properties, he received information from Texas, on or about February 23, 1920, that a deeper and richer oil sand had been discovered on some of the property offered for sale, which had increased the daily production on certain leases from about 750 barrels per day in December, 1919, when the property was listed with appellee for sale, to 2,500 barrels per day. On receipt of this information, Menasco suggested to appellee that it would be a good idea for the four companies in which he and appellee were interested to buy the properties at the bargain price at which appellee was authorized to sell and to use the $200,000 in cash in the treasuries of said companies as the initial payment. The four companies referred to and included in said suggestion were the Dal-Apolis Petroleum Company, of which Menasco was president and the majority stockholder, appellee being a director and owner of $2,300 of the capital stock of $300,000, or less than one per cent. thereof; the Birmingham-Dallas Oil & Gas Company, of which appellee was president and owner of $6,000 of its capital stock of $250,000, or 2 per cent. thereof; the Burk-Electra Petroleum Company, of which appellee was president and owner of $24,325 of its capital stock of $250,000, or 9 per cent. thereof; and the Sherman-Dallas Oil Company, of which appellee was president and the owner of $6,770 of its capital stock of $200,000, or 3 per cent. thereof. Of the capital stock owned by appellee in said four companies, his interest was less than 4 per cent. of their combined capitalization.

In answer to a wire from appellee and Menasco, Hudmon Hopson and Charles R. Reed, of Birmingham, Ala., two of the largest stockholders in said four companies, and also directors in some of them, came to New York, and, after appellee and Menasco discussed with them Menasco's proposition in reference to selling said properties to the above four oil companies, it was decided to submit the proposition to the stockholders of said four companies. For this purpose a meeting of the stockholders of the Burk-Electra, Birmingham-Dallas, and Sherman-Dallas Companies was called at Birmingham, Ala., where a majority of the stock of said companies was owned. Appellee then called off the negotiations then pending in New York City, and which were practically ready to be closed, which would have disposed of said properties. At this meeting Menasco's proposition was presented to and considered by the officers, directors, and some of the stockholders of said four companies, which resulted in the purchase of all of the properties of the Texhoma Company that had been listed with appellee for sale, except some wild-cat territory, at the consideration of $2,858,750. In the negotiations for, as well as in closing said sale, appellee acted exclusively for and represented the Texhoma Company and did not act for or in any respect represent the other four companies in said transaction, and made his position known by stating that he was "the agent of the Texhoma Company, and, as such, authorized to sell its properties, and that the Texhoma Company was taking care of him in the deal."

As a part of the plan for the acquisition of the properties of the Texhoma Company, said four companies so purchasing said properties were dissolved, consolidated, and reorganized into the Walker Consolidated Petroleum Company, and the purchase so contracted of said properties consummated by the Texhoma Company executing proper conveyance thereof to the Walker Consolidated Petroleum Company.

The commission to be paid appellee for making the sale of said properties was to be paid by the Texhoma Company out of the purchase price paid for its properties, and was in fact paid by the Texhoma Company, in different amounts aggregating $247,482.68, to appellee; the balance of the commission due him, to wit, $25,000, being held by the City National Bank of Wichita Falls, Tex. That no part of the commission so paid appellee was paid by the Walker Consolidated Petroleum Company or either of the four companies that were consolidated in the or-

ganization of said Walker Company. The property sold to said four companies so consolidated by the Texhoma Company was worth more than the price paid therefor, including the commission paid by the Texhoma Company to appellee.

Hudmon Hopson, T. H. Aldrich, Jr., and Charles R. Reed, who had been selected to represent three of the oil companies in the negotiations for the purchase of the properties of the Texhoma Company, on the 3d day of March, 1920, reached an agreement for the purchase of said properties with appellee, and on the 5th day of March, 1920, a formal contract of sale was drawn up and signed by W. B. Hamilton, of Wichita Falls, for the Texhoma Company, and by appellee, as president of the Walker Consolidated Petroleum Company; he having been selected as such officer over his protest. Said committee of three, in accordance with authority conferred upon them at said meeting in Birmingham, Ala., and Menasco, selected by and acting for the Dal-Apolis Company, proceeded to organize the Walker Consolidated Petroleum Company, and a charter was obtained from the secretary of state of the state of Texas, on March 6, 1920, for a corporation with an authorized capital of $10,000,000.

[1] It is clear from the record that appellee did not in any respect assume to represent the four consolidating companies that became merged in the Walker Consolidated Petroleum Company. It cannot be assumed as a matter of law that merely because of his connection with those companies he was precluded from contracting, as an individual, for a commission on the sale of properties belonging to another company of which he was president. He was not acting for such companies, at the time he was authorized to sell and to receive commission for the sale of the properties owned by the Texhoma Company, through the contract that was duly entered into for that purpose by the appellee and the Texhoma Company, and had no thought of any one of said companies as a prospective purchaser. By the terms of that contract, he acquired a valuable property right, to wit, the exclusive right of making the sale of the properties listed with him by the Texhoma Company on a commission basis of 10 per cent. of the purchase price for which said properties should be sold. Therefore, as to the rights thus created and existing, same had no relation to any fiduciary capacity that appellee occupied by virtue of his relationship with any of said consolidating companies. Even if it be conceded that appellee was a promotor, he had, without thought of the organization of the Walker Consolidated Petroleum Company, acquired, by virtue of his contract with the Texhoma Company, a valuable property right, in his individual capacity, and for his own personal use and enjoyment, to wit, making a sale of the properties and receiving, as an individual, the compensation to be paid him under the contract for such services. The property was sold on the terms and at the price authorized by the owner; the commission contracted to be paid appellee by the Texhoma Company was paid to him out of the proceeds arising from the sale of the property. The property was worth the purchase price. No fraud was practiced by appellee in the making of his contract with the Texhoma Company or in the making of the sale, and the fact that he was a director in one and president of three of the four consolidating companies, while creating a fiduciary relationship, in reference to all matters of interest to any one of said companies, requiring the utmost good faith on the part of appellee in dealing with such matters for or in behalf of such companies, or any of them, so as to secure the full measure of all benefits arising therefrom to the companies to be affected thereby, such relationship, however, was no barrier to appellee acting along the lines of conduct revealed by the record in this case.

The conclusion reached as to the rights of the parties to this appeal are justified by the following authorities: 14 C. J. § 342; Southwestern Portland Cement Co. v. Latta & Happer (Tex. Civ. App.) 193 S. W. 1115; Baldwin Ala. Truck Farms Co. v. Strode, 184 Ala. 213, 63 So. 522; Central Land Co. v. Obenchain, 92 Va. 130, 22 S. E. 876; Masberg v. Granville, 201 Ala. 5, 75 So. 154; Richardson v. Graham, 45 W. Va. 134, 30 S. E. 92; Densmore Oil Co. v. Densmore, 64 Pa. 43; In re Georgia Steel Co. (D. C.) 240 F. 473.

[2] The court did not abuse its discretion in refusing appellant the right to file the trial amendment tendered by him. Appellant sued to recover $272,482.68, commission paid appellee by the Texhoma Company. The $20,000 sought to be recovered under said trial amendment set up a different cause of action, viz.: $20,000 paid to attorney W. B. Hamilton by the Walker Company, in its stock, for legal services rendered it by him. It introduced a new cause of action in no way a part of the original cause of action alleged. Appellant knew, or by the exercise of that diligence required of suitors could have known, of the identical facts presented by his trial amendment several days before the trial began. Intervener, Hamilton, pleaded the facts in his plea filed April 17, 1925. The trial was begun April 25, 1925, and the amendment was requested April 27, 1925. In fact, appellant in his supplemental petition and answer to Hamilton's plea of intervention, in effect, alleged the same facts as pleaded in said trial amendment. Therefore the excuse offered by appellant, that he first learned of the facts on the trial, is refuted by the record. Clearly, under the environments that the trial amendment was offered, it would not have been proper to have permit-

ted appellant to have introduced into the case a new cause of action. Lipscomb v. Perry, 100 Tex. 122, 96 S. W. 1069; Phœnix Lbr. Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707; Bender v. Bender (Tex. Civ. App.) 187 S. W. 735 (743); Jackson v. Blair (Tex. Civ. App.) 165 S. W. 522.

In the development of the case, we have carefully considered the other assignments presented, but do not deem it necessary to here state our reasons for overruling same.

All assignments are overruled, and the judgment of the lower court is affirmed.

Affirmed.